UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § No. 4:22-CR-162 |
| | § |
| EDWARD WALSH VAUGHAN (1) | § |
| HADI AKKAD (2) | § |
| GINA ELLINGSEN (6) | § |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS'
JOINT MOTION IN LIMINE TO EXCLUDE GUILTY PLEAS AND
CONVICTIONS OF GOVERNMENT WITNESSES**

Defendants Edward Walsh Vaughan, Hadi Akkad, and Gina Ellingsen have filed a motion in limine to exclude guilty pleas and convictions ("guilty-plea evidence") of their co-defendants Jill Hall Mandichak, Sean Lynch, and Katherine Nguyen. Dkt. No. 202. For the reasons set forth below, and for the reasons set forth in Judge Scholer's most recent order denying an identical motion (Ex. A), the government opposes the motion.

**I.     BACKGROUND**

The defendants are charged with participating in a large, complex, and long-running conspiracy to obtain ill-gotten financial gain for themselves and their company, Electronic Transactions Systems Corporation (ETS), by hiding an undisclosed fee for processing credit and debit cards. Dkt. No. 1. As a result of the scheme, roughly 7,000 ETS clients paid the undisclosed, fraudulently disguised fees for tens of millions of card transactions, which ultimately inflated the company's value and led to the company's sale at a price of $170 million. During the scheme, the two lead defendants—Vaughan and Akkad—used

the criminally derived money to fund multimillion-dollar bonuses and purchase luxury vehicles, private aircraft, and high-end real estate. From the sale of the company alone, Vaughan collected about $107 million and Akkad received about $33 million.

The indictment charges six officers at ETS—Vaughan, Akkad, Hall Mandichak, Lynch, Nguyen, and Ellingsen—with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and separately charges Vaughan and Akkad with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Mandichak, Lynch, and Nguyen ("the Witnesses") have accepted responsibility for their actions and entered guilty pleas. These Witnesses are expected to testify at trial about the details of the hidden fee scheme, including: (i) their own illegal conduct; (ii) the illegal conduct of Vaughan, Akkad, and Ellingsen ("the Defendants"); (iii) how the scheme was set up; (iv) the material misrepresentations made; and (v) how everyone profited from those material misrepresentations.

As set forth below, the government intends to introduce their guilty pleas *not* as substantive evidence of the Defendants' guilt or to solely "blunt the sword" of impeachment on the issue. Rather, such evidence will eliminate questions the jurors will have about why the Witnesses were or were not charged and allow the jury to make an informed assessment about the Witnesses' credibility. Moreover, to protect the Defendants against the improper use of guilty-plea evidence, the Court can give the jury appropriate instructions, as it does in nearly every case charging a criminal conspiracy.

## II. LEGAL PRINCIPLES

The general rule is that "a witness-accomplice's guilty plea may be brought out at trial, provided that evidence serves a legitimate purpose and the jury is properly instructed about the limited use they may make of it." *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983) (citations omitted); *see also United States v. Valuck*, 286 F.3d 221, 228 (5th Cir. 2002); *United States v. Marroquin*, 885 F.2d 1240, 1247 (5th Cir. 1989); *United States v. Halbert*, 640 F.2d 1000, 1004-05 (9th Cir. 1981).

Courts have recognized multiple legitimate purposes for guilty-plea evidence. For instance, the government may introduce guilty-plea evidence to explain the nature of the relationship between the cooperating witness and the government. *E.g.*, *United States v. Hall*, No. 18-cr-623 (N.D. Tex. –Scholer, J.) (Doc. 901 attached). Because juries have the "difficult task of evaluating credibility," this evidence "is relevant and admissible without reference to the identity of the offering party." *Halbert*, 640 F.2d at 1004; *United States v. Universal Rehabilitation Services, Inc.*, 205 F.3d 657, 662 (3d Cir. 2000) (legitimate to help the jury "evaluate the [testifying co-conspirator's] motives and credibility.").

In addition, preventing the government from questioning a witness on direct examination about his or her guilty plea creates a false impression with the jury of prosecutorial concealment. *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976). Furthermore, it is appropriate for the government "to 'blunt the sword' of anticipated impeachment by revealing the information first." *Marroquin*, 885 F.2d at 1246; *see also United States v. Mazkouri*, 945 F.3d 293, 302 (5th Cir. 2019). In addition, "[i]t

may also be proper to introduce a witness's guilty plea to explain his firsthand knowledge of the defendant's misdeeds." *United States v. Gaev*, 24 F.3d 473, 476 (3d Cir. 1994).

Perhaps more importantly, the guilty-plea evidence prevents the jury from forming the false impression that the defendants were singled out for prosecution while the witnesses escaped criminal liability for their part in the scheme. *Valuck*, 286 F.3d at 228 (evidence properly admitted to show no unduly favorable deal with witness); *see also Marroquin*, 885 F.2d at 1247 (guilty-plea evidence proper to show that no "sweetheart deal" existed between government and witness); *United States v. Cohen*, 171 F.3d 796, 801 (3d Cir. 1999). And the introduction of guilty-plea evidence includes that the government "is permitted to outline its evidence during opening argument, and that, of course, includes evidence about an accomplice's guilty plea." *Valuck*, 286 F.3d at 229 (quoting *United States v. Magee*, 821 F.2d 234, 241 (5th Cir. 1987)).

Proper jury instructions are "[t]he fact that an accomplice has entered a plea of guilty to an offense charged is not evidence, in and of itself, of the guilt of any other person" and that such testimony should be "received with caution and weighed with great care." *Valuck*, 286 F.3d at 228; Fifth Circuit Pattern Jury Instructions No. 1.16 (Criminal 2019) ("The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person."). The Fifth Circuit has routinely upheld "nearly identical instructions[.]" *Id.* (citing *United States v. Abravaya*, 616 F.2d 250, 251-52 (5th Cir. 1980)). Indeed, this Court has presided over numerous criminal conspiracy cases, and to the government's knowledge, has issued this instruction whenever an accomplice testifies.

## III. THE GOVERNMENT HAS LEGITIMATE PURPOSES FOR INTRODUCING THE GUILTY-PLEA EVIDENCE

The Defendants boldly claim that there is no "legitimate probative value" of guilty-plea evidence in this case, save for "blunting the sword" of a forthcoming impeachment on the issue. Dkt. No. 202, p. 5. That is false. Here, the government has additional, separate, and legitimate reasons for introducing the guilty pleas of the Witnesses.

*First*, the guilty-plea evidence will rebut the notion that the Defendants were unfairly singled out for prosecution. The Witnesses will testify regarding the criminal scheme with the Defendants, including their role in the scheme and how they profited from it. If the Witnesses' guilty-plea evidence were excluded, the jury would naturally question why these Defendants were charged, while the Witnesses were not prosecuted for their involvement in the same scheme. *See Cohen*, 171 F.3d at 801. That remains true *even if* the Defendants choose to forgo questions about the Witnesses' convictions. *Id*. ("Even absent any suggestion by [the defendant], it would have been natural for the jury to wonder why the [defendant] was prosecuted but the [co-conspirators] were not."). Put another way, "[w]hen a co-conspirator testifies he took part in the crime with which the defendant is charged . . . [q]uestions will arise in the minds of the jurors whether the co-conspirator is being prosecuted." *Universal Rehab. Servs. (PA), Inc.*, 205 F.3d at 666. Such questions about the criminality of the Witnesses' conduct become all the more inevitable in this case, where the fraud scheme continued for several years, involved numerous employees of the company, and required direction, compliance, and execution from multiple co-conspirators. Introduction of guilty-plea evidence is proper to remove that jury confusion.

*Second*, by admitting their participation in the criminal conspiracy, the Witnesses necessarily put their credibility at issue. After all, the nature of the scheme involves repeated deceit, fraud, and dishonesty. In light of this, the jurors will naturally question the Witnesses' truthfulness, including the basis of their knowledge about the Defendants' conduct. Guilty-plea evidence—as opposed to an incomplete and stilted narrative of the Witnesses' participation in the crime—will help the jury assess "the reasonableness of the witness's claim to firsthand knowledge based on his or her admitted participation" in the charged crimes. *United States v. Davis*, 766 F.2d 1452, 1456 (10th Cir. 1985); *see also Mazkouri*, 945 F.3d at 302 (finding jury instruction was appropriate where jury instructed that guilty plea was introduced "because you may wish to consider it when you decide whether you believe the witness's testimony"); *Universal Rehab. Servs. (PA), Inc.*, 205 F.3d at 667 ("The fact that the witness has pled guilty to an offense concerning the very events that required his or her testimony makes it that much more likely that the testimony is truthful and reliable.").

*Third*, not only is the Witnesses' credibility at stake, but so is the credibility of the government's trial presentation and law enforcement's investigation. For the government to go through the Witnesses' testimony without mentioning their guilty plea, and to discuss the investigation of others at the company without mentioning resulting charges, would be disingenuous both to the facts and legal posture of the case. The Fifth Circuit has previously found that "guilty-plea evidence is admissible so that the jury is not left with the impression that the government [is] not being fully candid." *United States v. Black*, 685 F.2d 132, 135 (5th Cir. 1982). Indeed, exclusion of the guilty-plea evidence

undermines the very principle behind allowing it. "'If a co-conspirator who appears as a witness has pleaded guilty, the trier of fact *should know* about the plea agreement in order properly to evaluate the witness's testimony, unless that would unduly prejudice the defendant.'" *Gaev*, 24 F.3d at 476-77 (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 410[07] (1993)) (emphasis added).

Here, the Defendants' arguments about the resulting prejudice are unpersuasive. In essence, they fear their clients will be convicted because of guilt by association. That concern is unremarkable and arises in every criminal conspiracy case with multiple participants and testifying co-defendants. The standard for exclusion under Fed. R. Evid. 403 is that the probative value must be *substantially outweighed* by the danger of *unfair* prejudice. As described above, there is significant probative value in admitting the evidence because it allows the jury to evaluate the credibility of the witnesses, the investigation, and the government's presentation.

Moreover, the defense's concerns are mitigated by curative instructions from the Court, including the Fifth Circuit Pattern Instruction No. 1.16 that is routinely included in criminal conspiracy cases. And jurors are presumed to follow the Court's instructions. *United States v. Moparty*, 11 F.4th 280, 293 (5th Cir. 2021); *United States v. Valley*, 928 F.2d 130, 134 (5th Cir. 1991). For its part, the government cannot and will not argue that the Witnesses' guilty pleas are substantive evidence of the Defendants' guilt. But even otherwise, the Court's cautionary instructions should allay the Defendants' fear of prejudice, especially in light of their ability to emphasize those instructions during opening statement, cross-examination, and closing argument.

## IV. THE LIMITED SUCCESS OF THIS MOTION IN OTHER COURTS DOES NOT JUSTIFY GRANTING IT HERE

The cases cited and attached to the Defendants' motion are not precedential and are distinguishable. First, in *United States v. Kaluza*, Case No. 12-cr-265 (E.D. LA. February 3, 2016) (Dkt. No. 754, Ex. A), it appears that the court granted the motion in limine because the government did not "in large part" oppose it except if the Defendant opened the door to the testimony. Similarly, in *United States v. Gas Pipe, Inc.*, Case No. 3:14-cr-00298-M (N.D. TX. September 21, 2018) (Dkt. No. 754, Ex. B), the docket sheet reveals that the government chose not to respond to the motion in limine; indeed, the court's order does not reflect that it considered a response to the motion. Moreover, *Gas Pipe* is markedly different because there were over 20 guilty pleas that the defense was seeking to exclude. The sheer volume of guilty pleas in that matter may have justified handling them differently.

On point, however, is a recent decision by Judge Scholer denying a near-identical motion[1] in a criminal conspiracy case in the Northern District of Texas. *United States v. Hall*, No. 18-cr-623 (N.D. Tex. –Scholer, J.) (Doc. 901 attached as Ex. A). After receiving extensive briefing from both sides, Judge Scholer expressly found that the guilty-plea evidence could serve the legitimate purposes of "'clarifying the nature of the arrangement between the Government and the witness for purposes of determining credibility,'

---

[1] The motion is a familiar refrain from this defense team in particular. At least one counsel for each of the three remaining defendants has signed onto a similar motion in recent years, including the *Hall* case from last year.

'rebut[ting] the inference that the defendant was unfairly singled out for prosecution,' helping the jury 'evaluate the [testifying co-conspirator's] motives and credibility,' and aiding the jury in assessing 'the reasonableness of the witness's claim to firsthand knowledge based on his or her admitted participation' in the charged crimes.'" *Id*. Doc. 901 (quoting *Mazkouri*, 945 F.3d at 302; *Cohen*, 171 F.3d at 801; *Universal Rehab. Servs. (PA), Inc.*, 205 F.3d at 662; and *Davis*, 766 F.2d at 1456).

Importantly, in both *Hall* and *Mazkouri*, the courts received the same commitment the defendants offer here—to not impeach the cooperators based on their pleas and convictions.[2] In *Hall*, Judge Scholer admitted the guilty plea evidence of 8 cooperating co-defendants despite a commitment on the record from each defendant at the pretrial conference to not impeach the cooperators based on their pleas. *Hall*, No. 18-cr-623 (Hrg. on July 12, 2023). In *Mazkouri*, the Fifth Circuit upheld the trial court's decision to admit the guilty-plea evidence even though the defendant committed to not "raise the criminal charges, convictions or guilty pleas of government witnesses as impeachment." *United States v. Mazkouri*, Case No. 16-cr-213 (S.D.Tex. May 5, 2017) (Dkt. No. 60); *see* Fifth Circuit opinion at *Mazkouri*, 945 F.3d at 302. These instances, among many others,

---

[2] The defense proposes that it will let the government know, before the government passes the witness, if it wishes to discuss the plea agreements on cross examination so that the government can "blunt the sword." Notwithstanding the reasons described above, such a soft commitment is impractical, unfair, and unworkable. The defense could sandbag and force the government to tiptoe around the guilty-plea evidence on direct examination, only to spring its desire to explore the topic on cross examination shortly before the government passes the witness. Aside from making for an awkward appendage to the direct examination, this "warning" would effectively interfere with the government's obligation to meet its burden of persuasion and production.

highlight how courts see other legitimate reasons, like the ones highlighted above, for admitting guilty-plea evidence. This case is no different.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion in limine.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ Anand Varadarajan*
ANAND VARADARAJAN
Assistant United States Attorney
Texas State Bar No. 24088576
Email:  anand.varadarajan@usdoj.gov

G.R. JACKSON
Assistant United States Attorney
Texas State Bar No. 00784874
Email:  glenn.roque-jackson@usdoj.gov

HEATHER RATTAN
Assistant United States Attorney
Texas Bar No. 16581050
heather.rattan@usdoj.gov

101 East Park Boulevard, Suite 500
Plano, Texas 75074
972-509-1201
Fax: 972-509-1209

## CERTIFICATE OF SERVICE

I certify a true and correct copy of this motion was emailed to defense counsel on June 26, 2024.

*/s/ Anand Varadarajan*
ANAND VARADARAJN