IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:22-CR-162-ALM-KPJ |
| | § | |
| EDWARD WALSH VAUGHAN (1) | § | |
| HADI AKKAD (2) | § | |
| GINA ELLINGSEN (6) | § | |
| | § | |

**U.S. BANK AND ELAVON, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR FAVORABLE/IMPEACHING EVIDENCE**

Third-parties U.S. Bank National Association ("U.S. Bank N.A.") and Elavon, Inc. ("Elavon") (collectively "U.S. Bank"), by counsel, respectfully submit this response in opposition to Defendants' Motion for Favorable/Impeaching Evidence. Dkt. No. 218. This Motion requests, among other things, "any correspondence of any kind between anyone at U.S. Bank/Elavon (including its lawyers or other representatives) and the Department of Justice or agencies working on this investigation (including in Texas or Virginia)." *Id.* at 2. Defendants argue that they are entitled to this correspondence because it is relevant to U.S. Bank's motive or constitutes a government witness's prior statements under *Jencks*. *See Jencks v. United States*, 353 U.S. 657 (1957); 18 U.S.C. § 3500. Defendants' overly broad request is an improper attempt to obtain U.S. Bank's confidential communications to the Government, which are neither relevant to U.S. Bank's motive as a victim in this case nor do they constitute *Jencks* material. Defendants' request should be denied in full.

U.S. Bank is a victim in this case. On August 29, 2018, Elavon entered into an Asset Purchase Agreement ("the APA") with Defendant Edward Vaughan and ETS for the purchase of nearly all of ETS' assets. It was not until January 2019, several months after the APA transaction closed, that the Government informed U.S. Bank of its investigation into Defendant Vaughan and

other ETS employees' fraud scheme that began years before the APA closed and continued for months thereafter unbeknownst to Elavon. Once U.S. Bank learned from the Government that Defendants had engaged in fraudulent billing practices through ETS and concealed that fraud over the course of the APA negotiations, the company initiated its own internal investigation into the matter. This internal investigation was initiated by U.S. Bank in response to requests from the Government regarding the extent of the overbilling. Furthermore, the internal investigation was deemed necessary by U.S. Bank to determine whether the company had access to any legal recourse to remedy this troublesome situation and reimburse former ETS, now Elavon customers who were defrauded. U.S. Bank's investigation further determined that the company purchased ETS at a value that was inflated by virtue of Defendants' fraud. To compound matters, U.S. Bank continued to employ Defendants as officers of ETS throughout the earn out period specified by the APA, allowing Defendants to continue concealing their fraudulent billing practices post-acquisition. Throughout the parallel investigations, U.S. Bank engaged in communications with the Government in response to grand jury subpoenas and other requests. All of these communications were made in confidence and in furtherance of U.S. Bank's and the Government's *common interest* in assessing the extent of Defendants' fraud.

Defendants plainly seek communications that are protected by the common interest privilege and are not discoverable. U.S. Bank's emails to and from the Government remain protected from discovery because these communications were made in pursuit of a "common legal interest." Finally, to the extent that Defendants seek *Jencks* material within the communications U.S. Bank shared with the Government, the request is exceedingly more broad than what the courts consider "statements" under *Jencks*, shedding light on the inappropriate nature of Defendants'

request.[1] Furthermore, U.S. Bank has not shared any "statements" with the Government as defined by the Jencks Act. For these reasons, U.S. Bank respectfully requests that the Court deny Defendants' request.

## I. BACKGROUND

In January 2019, U.S. Bank learned of ETS' fraudulent overbilling practices when the Government's investigation into ETS and Defendants became overt. Elavon had acquired ETS only four months prior without having received disclosures from ETS and its representatives about ETS' fraudulent billing practices. Subsequently, U.S. Bank engaged Vinson & Elkins LLP ("V&E") as its outside counsel to assist with U.S. Bank's internal investigation into ETS' overbilling practices, including ETS' principals' knowledge regarding the same. This investigation was initiated in response to the Government's requests in support of their criminal investigation, with the parallel need to explore any potential legal recourse the company had against the Defendants. The company was concerned that Elavon may have to redress the fraud that had been concealed by Defendants in the course of ETS' and Elavon's negotiations of the APA. The company had further concerns because the fraud appeared to have continued post-acquisition while Vaughan and Akkad were employed by Elavon, as the two attempted to increase their earn-out payments during the period specified under the APA. Elavon received initial requests for information and documents from the U.S. Attorney's Office for the Eastern District of Virginia, followed by a grand jury subpoena in May 2019.

[1] U.S. Bank also submits that Defendants' request for "any favorable/impeaching material concerning the Virginia declination" is clearly improper. Courts consistently reason that evidence of a declination is not relevant under Federal Rule of Evidence 401, and hence not admissible. *See United States v. Reed*, 641 F.3d 992 (8th Cir. 2011) (collecting cases); *United States v. Gregory*, 2019 WL 195032 (D. Kan. Jan. 14, 2019); *United States v. Crook*, 2010 WL 27775399 (W.D. La. July 12, 2010).

On May 18, 2021, Elavon filed a complaint against ETS, Vaughan, and Akkad in Delaware Chancery Court. *See Elavon Inc., v. Electronic Transaction Systems Corp., Edward Vaughan, and Hadi Akkad*, C.A. No. 2021-0440-SG (Del. Ch. 2021). In the complaint, Elavon alleges that ETS, Vaughan, and Akkad engaged in a fraudulent scheme to increase ETS' revenues by hiding fees charged to their merchant clients. The complaint further alleges that ETS and Defendants failed to disclose this widespread overbilling scheme to Elavon during the course of the negotiations for the APA, and continued to engage in this scheme, concealing the fraud post-closing during their employment with Elavon, concurrent with the earn-out payments stipulated by the APA. Consequently, Elavon sought damages and equitable relief against ETS, Vaughan, and Akkad. The case was later transferred to the Superior Court of the State of Delaware, *Elavon, Inc., v. ETS, et al.*, C.A. No. N22C-05-079 MAA CCLD (Del. Sup. Ct. 2022), where the case remains stayed since August 2022, pending resolution of the criminal indictments.

## II. APPLICABLE LAW & ARGUMENT

Defendants mask their improper and exceedingly broad attempt to obtain U.S. Bank's correspondence with the Government by claiming that these letters and e-mails are "relevant" to U.S. Bank's "motive" in this matter. But U.S. Bank's motive—whatever Defendants may surmise it to be—is inapposite to the offenses charged in the indictment and any defenses Defendants may have. To the extent Defendants intend to impeach any witnesses employed by U.S. Bank, Defendants do not need access to U.S. Bank's counsel's correspondence with the Government.

The correspondence that U.S. Bank and its representatives have had with the Government is protected by the "common interest" doctrine, because the communications were made in furtherance of U.S. Bank's and the Government's common interest in assessing the extent of ETS' and Defendants' fraud. Furthermore, U.S. Bank has not shared any "statements" of a United States

witness, as "statement" is defined in the Jencks Act. *See* 18 U.S.C. § 3500 (e)(1)–(3). Defendants' request, which extends far beyond what Defendants would be entitled to under *Jencks*, is meant only to obtain U.S. Bank's counsel's confidential communications with the Government and thus disrupt the orderly prosecution of Elavon's civil claims against ETS. Defendants' request should be denied.

### A. U.S. Bank's Correspondence with the Government Is Protected by the Common Interest Doctrine

The common interest doctrine protects communications between two parties or attorneys that share a common legal interest. *See Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). Complete uniformity of interests is not required for the common interest doctrine to apply. *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 647 (E.D. Cal. 2014) (finding that the common interest doctrine protected information shared between plaintiff and the district attorney's office in furtherance of the parties' pursuit of environmental impact litigation based on a closely related set of facts, against a common adversary).

Importantly, courts have recognized common interest protections where private parties share documents with prosecuting attorneys, so long as the two have "shared common interests." *See e.g.*, *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 589 (S.D. W. Va. 2002) (finding that a client's voluntary disclosures to both the fire marshal and the prosecuting attorney remained protected, because they shared a common interest in "determining the cause of the fire which destroyed plaintiff's home."); *In re LTV Securities Litigation*, 89 F.R.D. 595, 621 (N.D. Tex. 1981) (classifying a corporate client and the SEC as participants in a "joint enterprise" when the corporation investigates the corporate client's illegal activities and shared its report with the SEC); *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-cv-58, 2010 WL 1489966, at *5

(E.D. Va. Apr. 13, 2010) (finding that voluntary disclosures to the government remained protected because corporation and the prosecuting attorney shared a common interest in investigating and addressing the theft of trade secrets).

Here, U.S. Bank's correspondence with the Government has been in furtherance of U.S. Bank's and the Government's shared interest in assessing the extent of Defendants' fraud. As a victim in this case, U.S. Bank has corresponded with the Government in response to typical requests made to a victim of a criminal fraud. Further underscoring U.S. Bank's common interest with the Government, U.S. Bank's own assessment of ETS' fraud is based on a set of facts closely related to those at issue in this criminal matter. The fact that U.S. Bank as a victim has initiated its own action to obtain relief from ETS', Akkad's, and Vaughan's fraudulent omissions over the course of APA negotiations does not change the common interest analysis. Victims of crime are not precluded from engaging in legal recourse outside the criminal system in order to find relief and parties with a shared common interest do not have to proceed on identical legal theories. *See California Sportfishing Protection Alliance*, 299 F.R.D. at 647.

### B. The Documents Sought Do Not Constitute Witness Statements Under Jencks and Are Not Discoverable

*Jencks* and the Jencks Act give Defendants the right to subpoena a Government witness' prior statements only "after a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(b). The Jencks Act defines the term "statement" as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id.* (e)(1)–(3).

Defendants' broad request in no way reflects the very specific nature of the "statements" they are entitled to under *Jencks*. Defendants have requested "any correspondence of any kind" between U.S. Bank and the Government, no matter the subject. If Defendants are entitled to discovery of any of U.S. Bank's correspondence with the Government, it is only the correspondence that constitutes a "statement" as defined by the Jencks Act. But such correspondence does not exist. U.S. Bank's emails and letters to the Government do not fall into the specifically defined category of "witness statements." And, importantly, U.S. Bank did not provide the Government with any interview reports or notes. Defendants' request for *Jencks* material is entirely inapposite here.[2]

## III. CONCLUSION

For the foregoing reasons, U.S. Bank respectfully asks the Court to deny Defendants' request for the Government to produce "any correspondence of any kind between anyone at U.S. Bank/Elavon" and "the Department of Justice or agencies working on this investigation."

Dated: August 6, 2024

Respectfully submitted,

*/s/ Michael S. Dry*

Michael S. Dry (*pro hac vice*)
Daniel T. Wallmuth (*pro hac vice*)
Ami Egerstrom (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Ave. NW, Ste. 500 West
Washington, DC 20037-1701
T: 1.202.639.6500 | F: 1.202.639.6604
mdry@velaw.com

*Counsel for U.S. Bank N.A. and Elavon, Inc.*

[2] Furthermore, Defendant's motion is premature. To invoke production under the Act, a defendant must move for production after the witness has testified: "The trial court cannot compel disclosure . . . at any earlier point." *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985), *cert. denied*, 474 U.S. 1086 (1986).

**CERTIFICATE OF SERVICE**

This pleading was filed and distributed to all counsel of record through the Court's ECF system.

*/s/ Michael S. Dry*
Michael S. Dry