IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | NO. 4:22-CR-00162-ALM-BD |
| § | |
| **EDWARD WALSH VAUGHAN (1)** § | |
| **HADI AKKAD (2)** § | |
| **GINA ELLINGSEN (6)** § | |

### MEMORANDUM OPINION AND ORDER

Defendants Edward Walsh Vaughan, Hadi Akkad, and Gina Ellingsen served subpoenas for documents and witness testimony on nonparties U.S. Bank National Association and Elavon, Inc. *E.g.*, Dkts. 234-1, 234-3. U.S. Bank and Elavon moved to quash the subpoenas. Dkt. 234; *see* Dkts. 261 (joint status report reflecting that two of the four subpoena disputes have been resolved), 263 (response to the remaining two disputes), 264 (reply), 265 (sur-reply). The court will grant the motion to quash in part and deny it in part. To the extent that the defendants' response purports to incorporate a motion to compel, *see* Dkt. 263, it will be struck for noncompliance with the court's rules.

### BACKGROUND

Vaughan, Akkad, and Ellingsen are former executives of Electronic Transactions Systems Corporation ("ETS"), a credit- and debit-card processing company. They were all indicted for conspiracy to commit wire fraud. Vaughan and Akkad were also indicted for conspiracy to commit money laundering. The indictment alleged that, from 2012 through 2019, the defendants defrauded thousands of ETS's merchant clients by deliberately disguising fees. It further alleged that, during that period, Vaughan and Akkad raked in millions of dollars to buy fancy cars, aircraft, and real estate.

In 2018, near the end of the defendants' alleged criminal conduct, U.S. Bank acquired ETS. That acquisition purportedly put the documents at issue here in U.S. Bank's hands. The defendants assert that the government has asked for or taken possession of only some of those

documents, making the defendants unable to obtain through discovery everything they need to prepare for trial. To complete the picture, the defendants served the subpoena for documents on U.S. Bank and its payment-processing arm Elavon. They also served a former U.S. Bank employee with a subpoena for trial testimony about the acquisition.

## DISCUSSION

### I. The subpoena for documents should be quashed, and the requested documents need not be filed under seal.

The document-production subpoena is directed to "US Bank/Elavon c/o Mike Dry, Vinson & Elkin." Without explaining what investigation it is talking about, it requests "all documents showing attrition of ETS clients following the FBI and U.S. Attorney's investigation and disclosure of ETS' actual processing rates," dividing those documents into three categories. Dkt. 234-1 at 5. U.S. Bank and Elavon argue that the requested documents are not relevant, admissible, or requested with adequate specificity.

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas for documents, which Latin enthusiasts call subpoenas duces tecum. It provides, in relevant part:

> **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

The court's (c)(2) power to quash or modify helps ensure that a subpoena issued under (c)(1) is the product of a good-faith effort to obtain evidence. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992). A Rule 17 subpoena cannot be used to circumvent Rule 16's limitations on discovery. *Id.* at 346; *see Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (explaining that "Rule 17(c) was not intended to provide an additional means of discovery").

2

The party who issues a Rule 17(c) subpoena bears the burden of showing that the requested documents are relevant, admissible, and described with adequate specificity. *United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (giving meaning to the words "unreasonable or oppressive" in Rule 17(c)(2) with reference to *Bowman* and *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)); *Arditti*, 955 F.2d at 345. The first prong of the *Nixon* test requires the documents to have "real relevance to the particular counts for which [the defendant] was charged." *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005). The second prong requires a movant to make a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. The final prong seeks to prevent a "fishing expedition." *United States v. Skilling*, No. H-04-025, 2006 WL 1006622, at *2 (S.D. Tex. Apr. 13, 2006); *see Bowman*, 341 U.S. at 220–221.

Even assuming the subpoena was directed to an appropriate person, the defendants did not meet their burden on any of those prongs. That means the Rule 17(c) subpoena should be quashed regardless of whether the defendants will be able to obtain the documents it seeks before trial through other means. And contrary to the defendants' request, the documents need not be filed with the court under seal.

**A.  It is at best unclear that the subpoena was directed to a "witness."**

The defendants' difficulties begin with the text of Rule 17(c)(1), which authorizes a subpoena to order "the witness" to produce specified items. The subpoena at issue here was directed to "US Bank/Elavon," two entities. It was sent "c/o Mike Dry, Vinson & Elkin," the entities' attorney. Neither of those recipients would naturally be described as "the witness" in Rule 17(c)(1).

Perhaps the situation would be different if the subpoena had been directed to the entities' custodians of records. But even that is uncertain. *See, e.g.*, *United States v. Wecht*, No. 06-0026, 2008 WL 250549, at *6 (W.D. Pa. Jan. 30, 2008).

In any event, U.S. Bank and Elavon did not object based on the text of Rule 17(c)(1), and the court need not rule on that basis. As explained below, *Nixon* is enough.

3

### B. The defendants failed to meet their burden under *Nixon*.

#### 1. The defendants did not show relevance.

U.S. Bank and Elavon argue that the requested documents are irrelevant to the charged offenses, which require the defendants to have agreed to commit wire fraud or money laundering and joined in that agreement knowing of, and with the intent to further, its unlawful purpose. U.S. Bank and Elavon assert that the documents, and whatever they may show about the alleged victims' states of mind, do not go to any of those required showings.

The defendants argue in response that the subpoena requests are relevant to show that U.S. Bank and the subset of its clients that had previously been ETS clients were not, in fact, victimized. They contend that the documents could be used to rebut U.S. Bank's claim that it lost millions of dollars due to the alleged fraud. They also say that the documents could be used to rebut any trial testimony by representatives of former ETS clients that ETS misled them. And in response to U.S. Bank and Elavon's observation that there are many reasons that a client, even if it felt misled, may have stayed or left after learning of the government's investigation, the defendants assert that the jury should sort that out—and that the requested documents are part of what it should be able to consider.

The court agrees with U.S. Bank and Elavon.

To convict the defendants of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, the government will have to prove that "(1) two or more persons made an agreement to commit an unlawful act; (2) the defendant[s] knew the unlawful purpose of the agreement; and (3) the defendant[s] joined in the agreement willfully, with the intent to further the unlawful purpose." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014); *see also United States v. Njoku*, 737 F.3d 55, 67–68 (5th Cir. 2013) (noting that 18 U.S.C. § 1349 does not require an overt act). And to convict Vaughan and Akkad of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the government will have to prove "(1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant[s] joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Fuchs*, 467

F.3d 889, 906 (5th Cir. 2006); *see also Whitfield v. United States*, 543 U.S. 209, 219 (2005) (noting that 18 U.S.C. § 1956(h) does not require an overt act).

None of the elements for either charged conspiracy requires the government to prove that U.S. Bank, Elavon, or any former ETS client was actually defrauded. The requested documents therefore do not have "real relevance to the particular counts for which [the defendants were] charged." *Butler*, 429 F.3d at 149. *Cf. United States v. Krenning*, 93 F.3d 1257, 1265 n.11 (5th Cir. 1996) (finding that a district court did not abuse its discretion in admitting handwritten notes by a defendant charged with mail fraud and conspiracy to commit mail fraud because the notes were relevant to demonstrate the defendant's intent to defraud, an element of mail fraud, and to rebut his defense that he relied on the advice of counsel); *United States v. Bell*, 336 F.R.D. 148, 152 (E.D. Mich. 2020) (finding that the defendant's subpoena request was relevant to a defense because the requested evidence showed that someone else committed the alleged crime); *see also United States v. Armstrong*, 517 U.S. 456, 462–63 (1996) (finding that "defense" in the context of discovery under Rule 16 means to refute "the Government's arguments [in its case-in-chief] that the defendant committed the crime charged"); *United States v. Cole*, 670 F.2d 35, 37–38 (5th Cir. 1982) (stating that "evidence in criminal trials must be strictly relevant to the particular offense charged" and that "the trial judge is given broad discretion to weigh the possible prejudice which might ensue in opening up collateral matters" (cleaned up)).

The defendants' argument that the documents would be relevant to rebut any trial testimony that U.S. Bank or its clients were victims of the alleged fraud also fails. At this point, whether the government will try to elicit testimony along those lines is speculative, and speculation cannot support a Rule 17(c) subpoena. *See, e.g.*, *United States v. Lopez*, No. 15-CR-252, 2022 WL 1137095, at *2 (E.D.N.Y. Apr. 16, 2022); *United States v. Mills*, No. 16-CR-20460, 2019 WL 76869, at *3–6 (E.D. Mich. Jan. 2, 2019); *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994). *Cf. United States v. LaRouche Campaign*, 841 F.2d 1176, 1179–80 (1st Cir. 1988) (finding that a request for impeachment evidence before a witness testified at trial sufficient under *Nixon* because it related

to a scheduled, key prosecution witness that had already testified at length at the separate trial of another defendant in a severed case).

If, at trial, the government attempts to elicit testimony about the alleged victimization of U.S. Bank or former ETS clients, the defendants can make whatever objections they deem appropriate. *See United States v. Alexander*, No. 3:20-CR-00031-CWR-LGI-1, 2022 WL 17097742, at *1–2 (S.D. Miss. Nov. 21, 2022) (denying as premature a motion to exclude victim-impact statements and explaining that the defendant could object to particular statements at trial, when the court would be able to consider their relevance in context). And if the trial unfolds in a way that makes the requested documents relevant, the defendants can request them under Rule 17(c) at that point. *See United States v. Jefferson*, No. 2:23-CR-00109-LK, 2024 WL 5170267, at *7 (W.D. Wash. Dec. 19, 2024) (noting that, "[t]o the extent testimony at trial reveals relevant materials that have not yet been produced, [the defendant] is free to request a subpoena for such documents").

The defendants' failure to show relevance is a sufficient reason to grant the motion to quash. *See Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345. But as explained below, the defendants also failed to meet their burden on the two remaining *Nixon* prongs.

   2. **The defendants did not show that the requested documents are admissible, and the subpoena did not describe them with adequate specificity.**

U.S. Bank and Elavon argue that the requested documents are unlikely to be admissible under Federal Rule of Evidence 403 because evidence of the victims' state of mind, rather than the defendants' state of mind, poses a substantial risk of misleading or confusing the jury. They add that the documents were not described with adequate specificity, asserting that the subpoena does not "give notice about the form the documents sought may take." Dkt. 234 at 6.

The defendants offer no response to those points. They could therefore not have met their burden with respect to them. *See Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345; *United States v. Raheja*, No. 1:19-CR-559-4, 2022 WL 2870902, at *4 (N.D. Ohio July 20, 2022). And at this stage, any contrary contention would be properly deemed forfeited (or, as some courts would put it, waived). *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) (explaining that "[a]

6

party forfeits an argument by failing to raise it in the first instance in the district court"); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (stating that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived"); *Document Sec. Sys., Inc. v. Ronaldi*, No. 20-CV-6265-EAW-MJP, 2022 WL 2207185, at *11 (W.D.N.Y. June 21, 2022) (noting that a district judge "will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not").

### C. That the defendants may have no other way to review the requested documents before trial does not excuse their failure to meet their burden.

Stating that U.S. Bank now has all of ETS's documents, the defendants argue that the Rule 17(c) subpoena should not be quashed because they cannot obtain the requested documents through any other means. They add that, if "the trial evidence comes out as [they] predict," the trial might be interrupted because the court might require U.S. Bank to produce the requested documents at that point. Dkt. 265 at 2.

That argument appears to go to elements of the *Iozia* test that *Nixon* recognized before announcing the applicable three-part test. *Nixon*, 418 U.S. at 699–700; *Arditti*, 955 F.2d at 345. In particular, the district court in *Iozia* stated that "good cause to entitle the defendant to production and inspection of documents under Rule 17(c) . . . requires [showings] by the defendant" that the requested documents "are not otherwise procurable by the defendant reasonably in advance of trial by the exercise of due diligence" and that "the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial." *Iozia*, 13 F.R.D. at 338.

The defendants' reference to the *Iozia* factors is understandable. Some courts have read *Nixon* to incorporate them, or at least not to displace them. *E.g.*, *United States v. Brown*, No. CR H-17-567-1, 2023 WL 5672836, at *2 (S.D. Tex. Sept. 1, 2023); *United States v. McClure*, No. 10-028, 2010 WL 3523030, at *2 (E.D. La. Sept. 1, 2010); *United States v. Ferguson*, No. 3:06CR137CFD, 2008 WL 113663, at *1 (D. Conn. Jan. 2, 2008). Deciding whether those courts are correct is not

7

necessary here, however, because both *Nixon* and *Iozia* require a showing of relevance that the defendants did not make. *Nixon*, 418 U.S. at 700; *Iozia*, 13 F.R.D. at 338; *see supra* Part I.B.1. And of course, *Iozia* could not displace the two remaining *Nixon* factors, on which the defendants likewise failed to meet their burden. *See supra* Part I.B.2.

### D. The documents need not be filed under seal.

The defendants request that, if the court quashes their Rule 17(c) subpoena, it order U.S. Bank and Elavon to file all responsive documents under seal to make them part of the record in the event of appeal. Dkt. 263 at 4. Perhaps that request is the "motion to compel production" part of their attempted combined filing. *Id.* at 1 (formatting altered). In that event, the court can take no action on the request because it was made in a putative motion that will be struck for noncompliance with the court's rules. *See* Loc. R. CR-47(a) (requiring that a motion in a criminal case "conform to the requirements of Local Rules CV-5 and CV-10" and, "unless made during a hearing or trial, . . . be accompanied by a separate proposed order for the judge's signature"), R. CR-47(a)(3) (requiring any motion to have a certificate of conference); R. CV-10(a)(2) (incorporating Local Rule CV-7(a)'s requirement that most motions be filed as separate documents).

But even if the request is part of the defendants' response to the motion to quash, it will not be granted. Whether the court is right or wrong that the Rule 17(c) subpoena should be quashed does not depend on what the requested documents say. It depends on whether the defendants met their burden under Rule 17(c) as interpreted by the Supreme Court and the Fifth Circuit. *See Arditti*, 955 F.2d at 347–48 (Goldberg, J., specially concurring) (explaining that, because the defendant did not show specificity, relevance, and admissibility, the district court did not err by quashing subpoenas without reviewing the responsive documents in camera). That determination may be made by reference to the defendants' filings in connection with the motion to quash, which will of course be part of any record on appeal.

In short, the court will not require the responsive documents to be filed under seal. As the defendants acknowledge, they could always "make appropriate 'proffers of proof'" at trial,

8

assuming it plays out the way they anticipate, in an effort to "show[] why the withheld evidence is material to their defense." Dkt. 265 at 2; *see* Fed. R. Evid. 103.

## II. The subpoena for witness testimony should not be quashed.

In addition to requesting documents under Rule 17(c), the defendants also subpoenaed a witness, Wade Baggarly, to testify at trial. Dkt. 234-3. That request was made under Rule 17(a), which provides that "[a] subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies." The Rule 17(a) subpoena checked all of those boxes.

Rule 17(a) differs from Rule 17(c) in several respects. Most notably here, it contains no language authorizing the court to quash a subpoena issued in compliance with its minimal requirements. The Sixth Amendment's guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor," might explain the silence. Even if all of Rule 17 is properly viewed as implementing that constitutional guarantee, *see* 2 C. Wright & A. Miller, Federal Practice and Procedure § 271 (4th ed. Supp. 2024), the ability to secure witness testimony is closer to the heart of the constitutional text than the ability to secure "any books, papers, documents, data, or other objects," Fed. R. Crim. P. 17(c), that a witness might bring with him.

Yet some courts have found the absence of Rule 17(c)(2)'s authorization in Rule 17(a) no obstacle to entertaining a motion to quash a subpoena ad testificandum, as it goes by in Latin. *E.g.*, *United States v. Avalos-Martinez*, 299 F.R.D. 539, 543 (W.D. Tex. 2014); *United States v. Klubock*, 639 F. Supp. 117, 123 (D. Mass. 1986). Other courts may have concluded that, if the drafters of Rule 17 had wanted to authorize courts to quash both subpoenas duces tecum and subpoenas ad testificandum, they would have crafted the rule some other way—such as by including the equivalent of Rule 17(c)(2) in Rule 17(a) or by placing that authorization in a part of the rule that applies to both types of subpoenas. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (explaining that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in

9

the disparate inclusion or exclusion"); *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (applying the expressio unius est exclusio alterius canon to a federal rule); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93–100, 167–169, 428 (2012); *United States v. Bandy*, No. 17-CR-3402-MV, 2021 WL 395516, at *4 (D.N.M. Feb. 4, 2021) (noting that Rule 17(a) "does not have the same provision for a court to quash or modify the subpoena if compliance would be unreasonable").

That could be the topic of a reasonable debate. But rather than engage in it when the parties have not done so in any meaningful way, the court will follow the advice of a leading treatise: "the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have." 2 C. Wright & A. Miller, Federal Practice and Procedure § 274 (4th ed. Supp. 2024). This is not an extraordinary case; the defendants have explained how, in their view, Baggarly's testimony will be relevant. Dkt. 263 at 4–5. *Cf. United States v. Kumar*, No. 4:17-CR-5-FL-1, 2019 WL 1486365, at *4 (E.D.N.C. Apr. 3, 2019) (granting a motion to quash a Rule 17(a) subpoena where the defendant "failed to offer any argument or information as to the relevance of the testimony sought"). If necessary, Baggarly may seek the remedies that Wright and Miller suggest. And if it shares U.S. Bank's and Elavon's view of the irrelevance of his anticipated testimony, *see* Dkts. 234 at 9–10, 264 at 3–4, the government may object on that basis, too, *see United States v. Adams*, No. 3:11-CR-54-02, 2011 WL 13115427, at *2 (N.D.W. Va. Nov. 10, 2011) (denying a motion to quash a Rule 17(a) subpoena and explaining that "[t]he Court w[ould] address any . . . concerns as they are raised by the parties at trial").

## CONCLUSION

It is **ORDERED** that the motion to quash, Dkt. 234, is **GRANTED IN PART**, **DENIED IN PART**, and **DISMISSED AS MOOT IN PART**. The Rule 17(c) subpoena that has not been withdrawn is **QUASHED**, the Rule 17(a) subpoena stands, and the prior dispute about the withdrawn Rule 17(c) subpoenas is moot.

It is **FURTHER ORDERED** that the part of docket entry 263 that purports to be a motion is **STRUCK** for noncompliance with the court's rules.

So **ORDERED** and **SIGNED** this 10th day of January, 2025.

_____
Bill Davis
United States Magistrate Judge