# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | Civil Action No. 4:22-cr-00162 |
| § | Judge Mazzant |
| EDWARD WALSH VAUGHAN (1) § | |
| HADI AKKAD (2) § | |
| GINA ELLINGSEN (6) § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion to Exclude Government's Experts for Failure to Provide Adequate Notice (Dkt. #211). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The relevant factual background is fully laid out in the Court's Order on Defendant's Joint Motion in Limine to Exclude Guilty Pleas and Conviction of Government Witnesses dated March 18, 2025 (Dkt. #294). On June 28, 2024, the Government filed a Notice of Expert Witness Testimony (the "Notice") to comply with its disclosure obligations under Federal Rule of Criminal Procedure 16 (Dkt. #205). *See* FED. R. CRIM. P. 16(a)(1)(G). The Notice lists anticipated expert testimony from four witnesses: (1) Rachael Bingham, a Certified Public Accountant and Certified Fraud Examiner employed as a forensic accountant by the FBI, (2) FBI Special Agent Melissa Lawrence,[1] (3) FBI Special Agent Matthew Lee, and (4) Special Agent Ronald Leazer, a

---

[1] The Government recently filed an Amended Expert Witness Notice on March 4, 2025 (Dkt. #273). The only change is the addition FBI Special Agent Jason Rennie as a White-Collar Crime witness (Dkt. #273 at pp. 1, 3–4).

Certified Public Accountant with the IRS – Criminal Investigations (Dkt. # 205). The Government states that it filed the Notice out of "an abundance of caution," and believes most of the testimony is governed by Federal Rule of Evidence 701, which relates to lay witness opinions (Dkt. #205 at p. 1).

On July 1, 2025, Defendants filed the instant Motion (Dkt. #211). Through it, they challenge the adequacy of the Notice, arguing that the Notice fails to provide a "complete statement of all opinions" and "the bases and reasons for them," and is therefore deficient under Rule 16 (Dkt. #211 at p. 2). Defendants argue that the Notice does not state Ms. Bingham's methodology, does not specify the opinions or types of evidence relied on by Special Agents Lawrence and Lee (the "Special Agents"), and does not fully explain Agent Leazer's opinions on how criminal money laundering generally works nor on the different forms of money laundering. (Dkt. #205 at pp. 4–5). Accordingly, they seek a Court Order that either excludes the proposed expert testimony or grants a continuance and requires the Government to provide a more detailed Notice (Dkt. #211 at pp. 5–6; Dkt. #216 at p. 5). The Government filed its Response on July 15, 2024, arguing that the Notice is not required because most of the testimony will fall under Rule 701 as lay opinion testimony and that the Notice is adequate for expert testimony (*See* Dkt. #215). On July 19, 2024, Defendants filed a Reply in support of their Motion, highlighting the ways they believe the Notice is deficient (*See* Dkt. #216).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to disclose the expert testimony that it plans to elicit at trial. To comply with Rule 16, the Government must provide a written statement containing: (1) "a complete statement of all opinions that the

2

government will elicit from the witness," (2) "the bases or reasons" for those opinions, (3) the witnesses qualifications, and (4) a list of all cases the witness testified at as an expert at trial or by deposition in the preceding 4 years. FED. R. CRIM. P. 16(a)(1)(G)(iii). The advisory committee note to the 2022 amendment to the Rule explains that it "is intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.* advisory committee's note to 2022 amendment. The Note goes on to explain that "the amendment requires a complete statement of all opinions that the expert will provide but does not require a verbatim recitation of the testimony the expert will give at trial." *Id.*

No Fifth Circuit case interprets what specifically constitutes a "complete statement of all opinions" under the Rule 16 as amended. The advisory committee's notes are equally silent on the requirement, only stating that "[a]lthough the language . . . is drawn from [Federal Rule of Civil Procedure] 26, the amendment is not intended to replicate all aspects of practice under the civil rule in the criminal cases, which differ in many significant ways from civil cases." FED. R. CRIM. P. 16 advisory committee's note to the 2022 amendment. While federal courts have not addressed the current version of Rule 16, some courts have interpreted the prior version of Rule 16. *See, e.g.*, *U.S. v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001); *U.S. v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002)

Under the prior version of Rule 16, the Government was required to provide a summary of the expert's opinion. *See Duval*, 272 F.3d at 828. The summary required the Government to provide the expert's opinion and bases for that opinion in a way that was more than a list of topics that would be addressed. *See, e.g.*, *U.S. v. Duvall*, 272 F.3d 825, 828; *U.S. v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (affirming the exclusion of expert testimony because Rule 16 disclosure did not

3

describe the opinions beyond stating the conclusion and did not give reasons for those opinions); *U.S. v. Kirkpatrick*, 4:13-cr-71, 2015 WL 12910736 (E.D. Tex. Apr. 1, 2015) (finding the statement "I expect him to testify about sexual conduct in internet chat rooms and sexual behavior including role playing," insufficient to comply with Rule 16's).

While the prior version of the Rule allowed for a more generalized statement of the expert's opinion and bases for them, the amended version requires something more specific. *See* FED. R. CRIM. P. 16. Under the prior version Rule 16, the notice required a "written summary" of the expert's opinions, while the amended version requires "a complete statement" of the expert's opinions. *Id.* advisory committee's note to the 2022 amendment. On its face, it is clear that the expert notice under the amended Rule must be more specific than a generalized summary but less specific than an expert report in a civil case. *See* FED. R. CRIM. P. 16 advisory committee's note to the 2022 amendment. The Court concludes that to be sufficient under Rule 16 as amended, a Notice must clearly state what opinions the expert will give and the bases for those opinions, such that the notified party can discern what opinions the expert holds, why the expert holds those opinions, and how those opinions relate to the facts of the case. *See id.*

## ANALYSIS

The Government filed its Expert Witness Notice for four individuals: Racheal Bingham, a forensic accountant with the FBI, Special Agents Lawrence and Lee, white-collar crime investigators with the FBI, and Special Agent Leazer, a CPA with the IRS (Dkt. #205). Defendants challenge the sufficient of the Notice for all of the listed experts (Dkt. #211). The Court will address each challenge in turn.

I.   **Notice of Racheal Bingham's expert testimony**

The Notice of Bingham's anticipated testimony provides the following opinions and bases for them:

1. Bingham is a CPA and forensic accountant at the FBI (Dkt. #205 at p. 2).

2. Bingham reviewed, analyzed and scheduled the financial and account records gathered by the FBI in its investigation of ETS (Dkt. #205 at p. 2).

3. Bingham will explain the financial activities of Defendants and testify how she analyzed the records, as well as the nature and flow of funds (Dkt. #205 at p. 2).

4. Bingham will highlight the transactions made in excess of $10,000 (Dkt. #205 at p.3).

5. Bingham will explain how she traced the funds from ETS to specific accounts controlled by Defendants Vaughan and Akkad, and how those accounts were used to purchase assets (Dkt. #205 at p. 3).

Defendants challenge the sufficiency of the Notice as to Bingham primarily because it does not explain the specific accounting methods that Bingham used in her analysis (Dkt. #211 at p. 4). The Government responds by stating that Bingham's testimony will fall under Rule 701, and to the extent that it is considered expert testimony, the Notice provides the adequate details required by Rule 16 (Dkt. #215 at pp. 6–8).

On its review, the Court finds that it is unlikely that the testimony of Bingham rises above lay witness opinion permitted in Federal Rule of Evidence 701 because all of her testimony revolves around her first-hand experiences in the investigation (Dkt. #205 at pp. 2–3; Dkt. #215 at p. 6). Courts have previously held that the testimony of FBI forensic accountants is lay opinion when summarizing financial records. *See, e.g.*, *U.S. v. Chalker*, 966 F.3d 1177, 1191–92 (11th Cir. 2020);

*U.S. v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002); *U.S. v. Williams*, No. 14-153, 2016 WL 6625032, at *1–3 (E.D. La. Nov. 9, 2016). Here, there is no indication that Bingham's testimony will exceed the permissible lay opinion of summarizing financial records and explaining their meaning to the jury.

To the extent that Ms. Bingham is considered as an expert under Federal Rules of Evidence 702, 703, or 705, the Notice adequately explains her opinions and the bases for those opinions by stating that she will discuss the documents she reviewed in the case and that she will explain the accounting methods used to trace the funds at issue (*See* Dkt. #205 at pp. 2–3). While the Court doubts this testimony constitutes expert testimony, the Notice provides adequate detail that Bingham will explain how the Defendants' violated the statute by explaining her role in the investigation and the documents she will analyze in her testimony (*See* Dkt. #205 at pp. 2–3). When looking at the Notice through the lens of the statute, the Notice clearly lays out that Bingham will testify to her opinions that the transactions she traced were evidence of the charged offenses, that the facts underlying her opinion are from evidence uncovered during the investigation of ETS and Defendants, and that her opinion is based on her training and experience as an accountant and FBI agent. Thus, the Notice complies with the more specific requirements of Rule 16.

II.    **Notice of FBI Special Agents Lawrence's and Lee's expert testimony**

Similarly, the notice of the Special Agents states that they will testify to the following opinions and bases for them:

1. The Special Agents will testify to their criminal investigation (Dkt. #205 at p. 4).

2. They will testify how the facts uncovered during the investigation are consistent with other corporate fraud investigations (Dkt. #205 at p. 4).

    3. They will testify and explain how the evidence disclosed shows the structure of the hidden-fee scheme, the materiality of the misrepresentations made to ETS clients, and how Defendants were enriched through the fraudulent scheme (Dkt. #205 at pp. 4–5).

Defendants challenge the sufficiency of the Notice with respect to the Special Agents because the Notice does not provide the types of evidence the Special Agents will use or the other fraud schemes they are familiar with (Dkt. #211 at p. 4). The Government responds by pointing out that the testimony of the Special Agents falls under Rule 701, but that even if it does rise to expert testimony, the Notice provides a fair opportunity to cross-examine the Special Agents or engage an opposing expert (Dkt. #215 at pp. 6–9). In regard to the evidence utilized by the Special Agents, the Notice provides that their reports and writings have been disclosed to the Defendants during discovery (Dkt. #205 at p. 5).

After reviewing the Notice and pleadings, the Court finds that it is unlikely that the testimony of the Special Agents will rise above lay witness opinion permitted in Federal Rule of Evidence 701. The Fifth Circuit has consistently held that "law enforcement officers may 'draw upon their familiarity with a particular case . . . to provide lay opinion testimony regarding the meaning of specific words used by and terms used by the particular defendants in the case.'" *U.S. v. Hill*, 63 F.4th 335, 356 (5th Cir. 2023) (quoting *U.S. v. Staggers*, 961 F.3rd 745, 761 (2020)). Thus, it is clear that much, if not all, of the testimony from the Special Agents will fall under Rule 701 because of their first-hand involvement in the investigation.

To the extent that the testimony of the Special Agents does rise to expert testimony, the Notice adequately explains their opinions and the bases for those opinions. The Special Agents will discuss their experience as white-collar crime investigators and how the evidence in this case is consistent with other investigations (Dkt. #205 at pp. 4–5). Further, the Government claims it has

"provided numerous reports and writing in discovery," which set out "the knowledge and information" known to the Agents (Dkt. #205 at p. 5). Thus, in the event the testimony of the Special Agents does constitute expert testimony, the Notice has clearly stated the opinions of the Special Agents that the evidence was sufficient to warrant the investigation and arrest of Defendants, and that the basis for that opinion was based on the evidence they uncovered during the investigation, their training as FBI Special Agents, and their experiences with the FBI in investigating white-collar crime. Thus, the Notice provides sufficient notice for Defendants to have a fair opportunity to prepare for cross-examination or to secure an opposing expert. *See* FED. R. CRIM. P. 16(a)(1)(G) advisory committee's note to 2022 amendment.

In the regard to Bingham and the Special Agents, Defendants seek an account that is akin to a verbatim explanation of testimony, with each opinion, methodology, and fact laid out (*Compare* Dkt. #211 at pp. 4–5, *with* Dkt. #205 at pp. 2–5). All the Government is required to do is provide a clear statement of what opinions they hold, why they hold those opinions, and how those opinions relate to the facts of the case. *See* FED. R. CRIM. P. 16. In doing so, the Notice provides a *fair opportunity* for Defendants to prepare for cross-examination and secure opposing expert testimony. *See id.* advisory committee note to the 2022 amendment. The Government does not have to provide a blueprint of all testimony that it plans to elicit from the witnesses. *See id.* The Government has complied with its obligations as to Ms. Bingham and Special Agents Lawrence and Lee.

### III.   Notice of Special Agent Leazer's expert testimony

The evaluation of Agent Leazer's Notice is a closer call. The Notice provides the following information regarding Agent Leazer's anticipated testimony:

1. Agent Leazer is an experienced investigator in money laundering cases (Dkt. #205 at p. 5).

2. Agent Leazer has reviewed the indictment and relevant seizure warrat materials related to the money laundering count (Dkt. #205 at p. 5).

3. Agent Leazer will explain how criminal money laundering works generally and discuss the different types of money laundering (Dkt. #205 at p. 5).

4. Agent Leazer will use examples to illustrate how illegally obtained funds are converted into assets as a way of money laundering (Dkt. #205 at p. 5).

Defendants argue that the Notice does not identify or provide a statement of the opinions Agent Leazer will offer on the topics of money laundering (Dkt. #211 at p. 5). The Government does not respond by claiming Agent Leazer's testimony is lay testimony under Rule 701 (*See* Dkt. #215 at pp. 5–7). Instead, the Government states in a conclusory manner that the Notice is more than adequate as required by the rule (Dkt. #215 at p. 9).

The statements provided in the Notice do not clearly state what Agent Leazer's opinions will actually be with respect to the current case. In a way, Agent Leazer's expert testimony is akin to the oft-admissible explanations drug trafficking methodology, including how money is transferred. *See, e.g.*, *U.S. v. Wilson*, 355 F.3d 358, 362 (5th Cir. 2003) (allowing testimony from an IRS agent about how drug traffickers use Western Union to move money and why they do so). However, the Notice fails to connect Agent Leazer's testimony about money laundering generally to the facts of this case. *See U.S. v. Hidalgo-Tavera*, 556 F. Supp. 3d 26, 29–31 (D.P.R. 2021) (requiring the government to explain the connection between a money laundering expert's noticed testimony about money laundering generally and the specific facts of this case). Thus, in order to comply with Rule 16, the Government must explain how Agent Leazer's opinions relate to the facts of this case, not just how money laundering works generally. *See id.*

9

Such a result is consistent with Fifth Circuit precedent regarding what type of expert testimony is permissible when discussing conspiracy schemes. *Compare U.S. v. Fuller*, 974 F.2d 1474, 1482–83 (5th Cir. 1992) (permitting testimony about how the facts of bearing on the investigation for drug money laundering lead to the arrest of the defendants); *with U.S. v. Hall*, 653 F.2d 1002, 1005–06 (5th Cir. 1991) (finding that a DEA agent's expert testimony on purely DEA investigative procedures in general and hypothetical terms was irrelevant because he discussed no facts bearing on the prosecution of the defendant). Thus, with respect to Agent Leazer, the Government must provide notice of how his testimony will relate to the facts in this case.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Joint Motion to Exclude Government's Experts for Failure to Provide Adequate Notice (Dkt. #211) is hereby **GRANTED in part** and **DENIED in part**. The Government shall amend the Notice to comply with this Order within five (5) days from the date of its entry.

**IT IS SO ORDERED.**

**SIGNED this 18th day of March, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE