# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Case No. 4:22-cr-162 |
| § | Judge Mazzant |
| EDWARD WALSH VAUGHAN (1) § | |
| HADI AKKAD (2) § | |
| GINA ELLINGSEN (6) § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Corrected Motion for Favorable/Impeaching Evidence (Dkt. #218). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

### I. Factual Background

The relevant factual background is fully laid out in the Court's Order on Defendant's Joint Motion in Limine to Exclude Guilty Pleas and Conviction of Government Witnesses dated March 18, 2025 (Dkt. #294). In short, U.S. Bank National Association and Elavon, Inc. (collectively the "Bank") entered into an asset purchase agreement with ETS and Vaughan for nearly all of ETS's assets (Dkt. #229 at p. 1). ETS was valued at approximately $170 million and the Bank assumed control of ETS's assets on August 29, 2018 (Dkt. #1 at ¶ 25; Dkt. #229 at p. 1).

In January of 2019, the Government informed the Bank that it was investigating Vaughan and ETS's employees for fraud (Dkt. #229 at pp. 1–2). Once the Bank became aware of the investigation, it began its own internal investigation into the matter (Dkt. #229 at p. 2). Throughout the parallel investigations, the Bank communicated with the Government in response to Grand Jury subpoenas and other requests (Dkt. #229 at p. 2). Additionally, the Bank filed a civil suit

against Defendants in Delaware, which has been stayed until the resolution of the criminal indictments in this case (Dkt. #229 at p. 4); *Elavon, Inc. v. ETS, et al.*, C.A. No. N22C-050079 MAA CLD (Del. Sup. Ct. 2022). Before the U.S. Attorney's Office for the Eastern District of Texas took up this case, the U.S. Attorney's Office for the Eastern District of Virginia reviewed the case and declined to prosecute (Dkt. #218 at p. 1).

## II.     Procedural Background

As part of discovery, Defendants filed this Corrected Motion on July 23, 2024, seeking (1) documents from the U.S. Attorney's Office for the Eastern District of Virginia, and (2) communications between the Bank and the Government (Dkt. #218). On August 6, 2024, the Bank filed its Opposition to Defendants' Motion for Favorable/Impeaching Evidence, opposing the production of its communications with the Government, asserting that the documents are privileged and entitled to protection under the common-interest privilege (Dkt. #229 at pp. 2–3). Defendants filed a response on August 12, 2024, arguing that the common-interest privilege is inapplicable to the Bank (Dkt. #235 at pp.3–6). The Bank filed a Reply to Defendants' Response on August 19, 2024, again arguing that it has a shared legal interest with the Government, and therefore the common-interest privilege protect its communications (*See* Dkt. #244). Defendants' filed a Sur-Reply on August 19, 2024, arguing the assertion of the common-interest privilege is inapplicable and does not override criminal discovery (*See* Dkt. #245).

As a preliminary matter, the Bank states in its Reply that it does not challenge the production of the documents from the U.S. Attorney's Office for the Eastern District of Virginia (Dkt. #244 at p2 n.1). Instead, it opposes production of those documents in their Opposition Motion (Dkt. #229 at p. 3 n.1). Because the Bank has affirmatively abandoned that challenge, the Court will not address the matter here and the Court expects the Government to produce the

2

documents, if it has not done so already. Thus, the only question remaining for the Court is whether the common-interest privilege applies to the communications between the Bank and the Government.

## LEGAL STANDARD

A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability. *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). The common-interest privilege protects communications between two parties or attorneys that share a common legal interest. *Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). Despite its name, the common-interest privilege is neither common nor a privilege. *Id.* In reality, it is an extension of the attorney-client privilege and the work-product doctrine. *Id.* Thus, the common-interest privilege is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party. *Id.* The common-interest privilege is rooted in criminal proceedings against multiple defendants, typically when the defendants face charges arising from the same criminal conduct or transaction. *Id.* In criminal cases, defendants share the common interest avoiding conviction, which led courts create a privilege which would protect documents exchanged in a joint defense effort. *Id.* The doctrine began to apply in civil cases because multiple defendants in civil cases often have a joint or similar objective. *Id.*

Scant case law exists discussing the application of the common-interest privilege in a criminal case where a non-party attempts to use the privilege to protect communications it has had with the Government. Thus, the Court will examine civil law to better explain the contours of the common-interest privilege. In civil cases, the common-interest privilege protects only two types of

communications: (1) those between co-defendants in actual litigation and their counsel, and (2) those between potential co-defendants and their counsel. *In re Santa Fe Int'l Corp*, 272 F.3d 705, 710 (5th Cir. 2001). The Fifth Circuit has held that the common-interest privilege "extends to communications made among persons who consult an attorney together as a group with common interests in seeking common representation." *Id.* at 711; *SB IP Holdings LLC v. Vivint Smart Home, Inc.*, No:20-cv-00886, 2022 WL 19977100, at *4 (E.D. Tex. Aug. 18, 2022). Communications may be protected by the common-interest privilege only if those communications further a joint or common interest. *Id.*

For parties to invoke of the common-interest privilege, they must have an identical—not similar—legal interest. *Id.* One party "rooting" for another to win is not a common legal interest. *U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 1031157, at *5-6 (E.D. Tex. Mar. 15, 2016).[1] So, the analysis to determine the application of the common-interest privilege rests on the characterization of the legal interests between the party invoking the privilege and the other party to the communications. *See id.*

## ANALYSIS

The issue before the Court is whether the Bank, as a material witness in this case, can assert the common-interest privilege to protect its voluntary communications with the Government. The Bank argues that the common-interest privilege applies to these communications because "the

---

[1] Under current Fifth Circuit precedent, a question exists over whether co-plaintiffs can use the common-interest privilege. *BCR Safeguard Holding, LLC v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. App'x 690, 703 (5th Cir. 2015). Further, whether the common-interest privilege can apply to two non-parties has yet to be directly considered by the Fifth Circuit. *See id.* at n.20 (citing *Stanley v. Trinchard*, No. Civ.A. 02-1235, 2005 WL 230938, at *1 (E.D. La. Jan. 27, 2005) ("Smith's client, Burge, is not a co-plaintiff or potential co-plaintiff with Stanley and Sheriff Strain. Smith and Burge have a financial interest in the outcome of this litigation. This is an insufficient basis for finding a common legal interest.").

communications were made in furtherance of [the] Bank's and the Government's common interest in assessing the extent of ETS' and Defendants' fraud." (Dkt. #229 at p. 4). To support its argument, the Bank cites a number of civil cases where the common-interest privilege was used between the Government and a private individual. (*See* Dkt. #229 at pp. 5–6).

Defendants counter by arguing that the Bank has cited no authority for the possibility of a common interest between a witness and the Government in a criminal case (Dkt. #235 at p. 2). Further, they argue that there is no common-interest agreement between the Government and Bank, nor is there a Federal Rule of Evidence 502(d) order that would stop the waiver of privilege when the Bank communicated with the Government (Dkt. #235 at pp. 2–3).[2] Finally, Defendants point out that the Bank has not, and cannot, show a common legal interest with the Government (Dkt. #235 at p. 3–5).

On a simple review of the cognizable legal interests of the Bank and the Government, it is clear that the interests are not identical. The Bank's legal interest is to recover civil damages for damages it allegedly incurred from ETS's and Defendants' fraudulent acts (*See* Dkt. #229 at p.4). Obviously, the Governments' legal interest is to seek the conviction of Defendants for the offenses alleged in the Indictment (*See* Dkt. #1). The Bank's claim that it has a "common interest in assessing the extent of Defendants' and ETS's fraud," is not the type of legal interest sufficient to be rewarded with the protection of the privilege. *See In re Santa Fe Int'l*, 272 F3d at 710 (stating that the common-interest privilege must be construed narrowly). Here, the legal interests of the Bank and Government are not identical, nor are they similar enough for the Court to see how the

---

[2] Rule 502(d) states that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a waiver in any other federal or state proceeding."

common-interest privilege could apply. *See* Ferko, 219 F.R.D. at 401. The reason for this is because the Bank is narrowly focusing on the reason it communicated with the Government instead of looking at its overall legal interest in this prosecution as it relates to the remedy it seeks in its civil suit. *See SB IP Holdings LLC*, 2022 WL 19977100, at *4; *Ocwen Loan Servicing, LLC*, 2016 WL 1031157, at *5–6. In other words, the legal interest of the Bank is not narrowly focused on "assessing the extent of ETS's and Defendants' fraud," but rather its legal interest in recovering civil damages in its civil lawsuit (Dkt. #229 at p. 4). *See SB IP Holdings LLC*, 2022 WL 19977100, at *4. Thus, in this criminal case, the Bank is doing nothing more than "rooting for" the Government to win. *Ocwen Loan Servicing, LLC*, 2016 WL 1031157, at *5–6.

Further, binding Fifth Circuit precedent has only recognized the common-interest privilege in regard to co-defendants or potential co-defendants. *See BCR Safeguard*, 614 Fed. App'x at 703. The Bank is not a party to this lawsuit, nor is it a defendant or potential co-defendant. Thus, the Bank asks the Court to jump into a dark and murky swamp without any guiding light from the Fifth Circuit, which has yet to extend the common-interest privilege to co-plaintiffs in a civil case. *See id.* at 704 n.20. The Court declines to leap into that swamp today. Accordingly, Defendants' Motion is granted, and the Government is ordered to produce the documents without delay.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Corrected Motion for Favorable Impeaching Evidence (Dkt. #218) is hereby **GRANTED**. The Government shall comply with this Order within five (5) days from the date of its entry.

**IT IS SO ORDERED.**

**SIGNED this 18th day of March, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE