# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-162 |
| | § | Judge Mazzant |
| EDWARD WALSH VAUGHAN (1) | § | |
| HADI AKKAD (2) | § | |
| GINA ELLINGSEN (6) | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Akkad's Motion for Continuance Based Upon Return of Superseding Indictment or in the alternative, to be Tried on Original Indictment or to Dismiss or Sever Last Minute Charges (Dkt. #281), Opposition of Defendant Gina Ellingsen to Continuance and Motion to Sever (Dkt. #282), Defendant Akkad's Motion to File Defense Declaration *Ex Parte* and Under Seal (Dkt. #289); Defendant Akkad's Corrected Motion for Leave to File Response to Sur-Reply on Continuance (Dkt. #295); and Defendant Akkad's Motion to File Second Attorney Declaration of Ongoing Work *Ex Parte*, Under Seal (Dkt. #300; Dkt. #301). Having considered the Motions, the relevant pleadings, and the applicable law the Court finds that the Defendant Akkad's Motion for Continuance Based upon Return of Superseding Indictment, or in the alternative, to be Tried on Original Indictment or to Dismiss or Sever Last Minute Changes (Dkt. #281) should be **DENIED**. The Court further finds that Defendant Ellingsen's Motion to Sever should be **DENIED as moot**. The Court finds that Defendant Akkad's Motion to File Defense Declaration *Ex Parte* and Under Seal (Dkt. #289), Corrected Motion for Leave to File Response to Sur-Reply on Continuance (Dkt. #295), and Motion to File Second Attorney Declaration Ongoing Work *Ex Parte*, Under Seal (Dkt. #300; Dkt. #301) should be **GRANTED**.

# BACKGROUND

## I.    Factual Background

Electronic Transactions Systems Corporation ("ETS") was a credit and debit card processing company incorporated and headquartered in Virginia (Dkt. #274 at ¶ 1). Between 2012 and 2019, ETS had over twenty-five employees and provided card processing services for approximately 7,000 customers, including government municipalities, charitable organizations, and private businesses (Dkt. #274 at ¶ 1). Edward Vaughan, ETS's President, and Hadi Akkad, ETS's Executive Vice President, were the executives in charge of the day-to-day operations of ETS (Dkt. #274 at ¶ 3). Other leadership positions were held by Jill Hall Mandichak, the Nation Sales Manager; Sean Lynch, the Sales Manager; Katherine Nguyen, the Director of National Accounts; and Gina Ellingsen, the Payment Industry Expert (Dkt. #274 at ¶ 3). As a credit and debit card processing company, ETS served as a middleman, communicating card transaction information between the bank that issued a customer's debit or credit card and the business or entity accepting the card for payment (Dkt. #274 at ¶ 4). As part of its business, ETS charged a fixed fee set by the card brand associations (e.g., Visa, Mastercard, American Express, etc.), as well as an additional markup fee for providing the card processing service (Dkt. #274 at ¶¶ 6–7).

On July 13, 2022, the Grand Jury indicted Vaughan, Akkad, Hall Mandichak, Lynch, Nguyen, and Ellingsen for conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and indicted Vaughan and Akkad for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (the "Original Indictment") (*See* Dkt. #1). According to the Original Indictment, Defendants used ETS's position as a middleman in card-payment transactions to include hidden fees in transactions with their clients, which allowed ETS to illicitly obtain millions of dollars through the fraudulent concealment of the fees (Dkt. #1 at ¶¶ 8–15). To conceal the scheme and

buy loyalty, Vaughan and Akkad allegedly paid their employees substantial bonuses, bought them vehicles, and provided other non-monetary incentives (Dkt. #274 at ¶ 23). Finally, because of the hidden-fee scheme, ETS was valued at approximately $170 million and sold its assets to Elavon, Inc. and U.S. Bank National Association (collectively the "Bank") as part of an acquisition (Dkt. #229 at p. 1; Dkt. #274 at ¶ 24). As a result of the acquisition, Vaughan received approximately $107 million, and Akkad received approximately $33 million (Dkt. #274 at ¶ 24).

## II.    Procedural Background

On August 4, 2022, the Court signed a Pretrial Order, setting the Final Pretrial Conference for October 7, 2022 (Dkt. #47). On August 29, 2022, the Court granted Defendants' First Motion for Continuance, setting the Pretrial Conference for June 2, 2023 (Dkt. #100; Dkt. #101). On December 15, 2022, Hall Mandichak, Lynch, and Nguyen all pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Dkt. #123; Dkt. #128; Dkt. #133). On March 30, 2023, the Court granted the Government's Unopposed Motion to Designate the Case Complex, as well as an Agreed Motion for a Second Continuance, setting the Pretrial Conference for April 1, 2024 (Dkt. #144; Dkt. #145; Dkt. #146; Dkt. #147). On November 16, 2023, the Court again granted Defendants' Unopposed Motion for Continuance and set trial for September 3, 2023 (Dkt. #178; Dkt. #179). Yet again, on August 19, 2024, the Court granted Defendants' Fourth Unopposed Motion for a Continuance and set trial for March 31, 2025 (over two years from the initial setting of October 2022) (Dkt. # 239; Dkt. #243).

All seemed to be going smoothly as trial approached until the Government filed a Superseding Indictment on March 5, 2025, twenty-seven days before trial (Dkt. #274). The new indictment largely cleaned up the Original Indictment; however, it also provided more clarity regarding Count 2 against Vaughan and Akkad for conspiracy to commit money laundering in

violation of § 1956(h) (*Compare* Dkt. #1, *with* Dkt. #274). The Superseding Indictment expands the scope of Count 2 to include four additional years, now charging the conspiracy to commit money fraud occurred from April 2012 through the summer of 2023 (Dkt. #274 at ¶ 26). Additionally, it explicitly charges Vaughan and Akkad with conspiring to conceal the illicitly obtained funds, specifically pointing to Akkad's transfer of over $12 million into a bank account solely held in his wife's name (Dkt. #274 at ¶¶ 26–28). Akkad's transfer of over $12 million occurred sometime in January 2023, about one month after Hall Mandichak, Lynch, and Nguyen pleaded guilty (Dkt. #274 at ¶ 28).

On March 10, 2025, in response to the filing of the Superseding Indictment, Akkad alone filed a Motion for Continuance, or in the Alternative to Dismiss or Sever the Superseding Indictment, seeking a fifth continuance of at least thirty days, arguing that the ends of justice require a continuance because he needs more time to prepare for trial and will be prejudiced without one (Dkt. #281). Vaughan did not join Akkad's motion for a continuance (*See* Dkt. #281). Ellingsen filed a Response in Opposition to Continuance and Motion to Sever the charges against her, seeking to proceed to trial on March 31, 2025 (*See* Dkt. #281; Dkt. #282).

On March 14, 2025, the Bank, a material witness in this case, filed a Response opposing a continuance because two of its executives have scheduled to at the anticipated multi-week trial (Dkt. #284). The Government also filed its Response on March 14, 2025, arguing that a continuance is unwarranted because the Superseding Indictment is based on the same evidence that has already been disclosed in this case (Dkt. #286). Further, it argues the timing of when it filed the Superseding Indictment was reasonable when it discovered Akkad's transfer of over $12 million to his wife's bank account one month after his co-defendants pleaded guilty, which

4

occurred without notice to the Government, nor the Court's approval (Dkt. #286). On March 17, 2025, Ellingsen filed her Reply to the Government's Response, re-urging the denial of a continuance, or in the alternative to sever her from Vaughan and Akkad to allow her to go to trial on March 31 (Dkt. #288).

On March 17, 2025, Akkad filed a public Reply to the Government's Response, as well as a sealed *ex parte* declaration from his counsel explaining the work they were doing to respond to the Superseding Indictment and why a continuance is warranted (Dkt. #287; Dkt. #289). Also on March 17, the Government filed a Sur-Reply to Akkad's Response (Dkt. #290). On March 18, 2025, Akkad filed a Corrected Motion for Leave to Respond to the Government's Sur-Reply justifying his filing of the *ex parte* declaration, as well as re-urging his request for another ends of justice continuance (Dkt. #295). On March 20, 2025, Akkad filed his Motion for Leave to File Second Attorney Declaration of Ongoing Work *Ex Parte*, Under Seal, further explaining the work his counsel was doing to respond to the Superseding Indictment as a basis for continuance (Dkt. #300; Dkt. #301).

## LEGAL STANDARD

### I.    Grounds for Continuance

The denial of a continuance is within the sound discretion of the trial court. *U.S. v. Kelly*, 973 F.2d 1145, 1147–48 (5th Cir. 1992). A superseding indictment is a tool that prosecutor's use to amend an indictment, and it may be retuned any time before a trial on the merits, absent prejudice to the defendant. *See U.S. v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990). Additionally, the filing of a superseding indictment does not restart the thirty-day trial preparation period. *See U.S. v. Rojas-Contreras*, 474 U.S. 231, 234 (2985). While not every superseding indictment warrants a continuance, the district court has the discretion to grant an "ends of justice" continuance when

the Government seeks a superseding indictment that prejudices a defendant. *Rojas-Contreras*, 474 U.S. at 236. To grant a continuance for prejudice, the prejudice must be "specific and compelling" or "serious prejudice." *U.S. v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999). Generally, the Fifth Circuit applies a totality of the circumstances test, looking at the specific facts in each case to determine if a continuance is warranted. *U.S. v. Boukamp*, 105 F.4th 717, 746 (5th Cir. 2024) (citing *U.S. v. Sheperd*, 27 F.4th 1075, 1085 (5th Cir. 2022)). To that end, the following factors are used to determine whether an "ends of justice" continuance is warranted:

1. The amount of time available to prepare for trial;
2. The defendant's role in shortening the time available;
3. The likelihood of prejudice from denial;
4. The availability of discovery from the prosecution;
5. The complexity of the case;
6. The adequacy of the defense actually provided at trial;
7. The experience of the attorney with the accused;
8. The timeliness of the motion.

*U.S. v. Ashley*, 128 F.4th 641, 654–55 (5th Cir. 2025) (citing *Boukamp*, 105 F.4th at 746)).

## II.    Grounds to Dismiss Superseding Indictment

Federal Rule of Criminal Procedure 48(b) states that the "court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting the charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." When a superseding indictment is brought shortly before trial, a district court can utilize Rule 48(b) to dismiss the charges in the superseding indictment and proceed to trial on the original indictment. *U.S. v. Hale*, 585 F.3d 522, 537 (5th Cir. 2012). District courts have "extremely broad discretion regarding whether to dismiss under Rule 48(b)." *U.S. v. Garcia*, 995 F.2d 556, 561 n.8 (5th Cir. 1993) (citing *U.S. v. Novelli*, 554 F.2d 800, 803 (5th Cir. 1997)). However, the "discretion

embodied in Rule 48(b) to dismiss an unnecessarily delayed indictment is constrained by long-standing authority holding that a superseding indictment may be filed any time before trial on the merits." *U.S. v. Millet*, 559 F.2d 253, 258 (5th Cir. 1977). The fact that some delay occurs before a superseding indictment is filed will not support its dismissal when the case is proceeding forward to trial with appropriate speed. *U.S. v. Page*, No. 4:20-cr-296-SDJ, 2022 WL 3567066, at *3 (E.D. Tex. Aug. 18, 2022) (citing *U.S. v. Trahan*, 333 F. App'x 818, 820 (5th Cir. 2009)).

### III.    Grounds to Sever Superseding Indictment

Federal Rule of Criminal Procedure 14(a) provides that "if the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." In the Fifth Circuit, Rule 14(a) can be used as an alternative to continuance to sever parts of a superseding indictment if it is filed shortly before trial and if trial on the superseding indictment would be prejudicial to the defendant. *See Hale*, 685 F.3d at 537. Under Rule 14(a), severance is only required in cases of compelling prejudice. *U.S. v. Rice*, 607 F.3d 133, 142 (5th Cir. 2010). The Court has broad discretion in determining whether severance is appropriate. *Zafiro v. U.S.*, 506 U.S. 534, 537 (1993).

### ANALYSIS

Akkad's arguments for a continuance stem from the proposition that the Superseding Indictment expands the charge for conspiracy to commit money laundering by four years, requiring defense counsel to undergo significant work to prepare a defense for those years (Dkt. #281 at pp. 3–4). To support his request for an "ends of justice" continuance, Akkad argues that the filing of the Superseding Indictment within the thirty-day window before trial created a prejudice against Akkad in his trial preparation and defensive strategy, which only a continuance can remedy (Dkt.

7

#281 at pp. 3–5). In the alternative, Akkad argues that the Court should dismiss the Superseding Indictment under Federal Rule of Criminal of Procedure 48(b) or sever the new charges in the Superseding Indictment under Rule 14(a) (Dkt. #281 at pp. 6–7). To support this request, Akkad again cites to the prejudice he will incur by going to trial on the Superseding Indictment without more time to prepare (Dkt. #281 at pp. 6–7).

The Government argues that Akkad is not entitled to a continuance or dismissal for three reasons (Dkt. #286). First, Akkad has received ample time to prepare because the Government has not relied on any new documents to support its allegations in the Superseding Indictment and because the Court has granted four prior continuances in this case (*See* Dkt. #286 at pp. 6–9). Second, any prejudice caused to Akkad by the Superseding Indictment is self-inflicted because he has had ample time to prepare his case, and he was the one who concealed the transfer of over $12 million to his wife's account one month after his co-defendants pleaded guilty (Dkt. #286 at pp. 9–10). Finally, the timing for when the Government filed the Superseding Indictment is reasonable because it took the Government until the end of 2024 to discover the transfer that Akkad made to his wife in 2023, and because prosecutors are generally allowed to file a superseding indictment at any time before a trial on the merits (Dkt. #286 at pp. 10–12). In short, the Government relies on the fact that the changes made in the Superseding Indictment are based on the same disclosed evidence and the timing for when it was filed was because of Akkad's actions in concealing the transfer of millions of dollars to his wife (Dkt. #286 at pp. 1–12).

In order to better understand the issues Akkad raises over the Superseding Indictment, the Court finds it helpful to compare the differences between the Superseding Indictment and the Original Indictment. The Superseding Indictment cleans up much of the language relating to

Count 1, regarding the charge of conspiracy to commit wire fraud (*Compare* Dkt. #1 at ¶¶ 1–25, *with* Dkt. #274 at ¶¶ 1–24). However, the Superseding Indictment notably adds that Defendants' Vaughan and Akkad attempted to conceal their criminal scheme by creating a workplace laden with incentives to reward loyalty and discourage exposure of ETS's hidden-fee scheme (*Compare* Dkt. #1 at ¶¶ 23–25, *with* Dkt. #274 at ¶¶ 23–24). The Superseding Indictment further alleges that Defendants Vaughan, Akkad, and Ellingsen continued working at ETS after the Bank's acquisition to coverup the hidden-fee scheme (*Compare* Dkt. #1 at ¶¶ 13–25, *with* Dkt. #274 at ¶ 24). Count 2, regarding the charge against Vaughan and Akkad for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), has more meaningful additions from the Original Indictment, as set out below:

Original Indictment

27. Between in or around April 2012 and continuing through the spring of 2019, in the Eastern District of Texas and elsewhere, the defendants, Edward Vaughan and Hadi Akkad, did knowingly conspire with each other and with other persons known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1957, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, a violation of Title 18 United States Code Section 1343.

Superseding Indictment

26. Between in or around April 2012 and continuing through the summer of 2023, in the Eastern District of Texas and elsewhere, the defendants, Edward Vaughan and Hadi Akkad, did knowingly conspire with each other and with other persons known and unknown to the Grand Jury to:

a. knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity,

9

that is, wire fraud in violation of 18 U.S.C. § 1343, **knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity**, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(l)(B)(i); and

b. knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, that is, wire fraud in violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1957.

28. **Vaughan and Akkad also engaged in financial transactions that were designed to conceal and disguise the true nature, location, source, ownership, and control of their fraudulently obtained proceeds. For example, in January 2023, approximately one month after co-defendants Hall Mandichak, Lynch, and Nguyen pleaded guilty to wire fraud in this matter, Akkad transferred over $12 million dollars of the money he obtained from the fraudulent sale of the company to a brokerage account held solely in the name of his wife, K.A**.

(Dkt. #1 at ¶ 27; Dkt. #274 at ¶¶ 26, 28) (emphasis added to highlight changes).

Before turning to Akkad's Motion for Continuance and Motion to Dismiss or Sever the Superseding Indictment, the Court finds it appropriate to grant Akkad's Motion to File Defense Declaration *Ex Parte* and Under Seal, Motion for Leave to Respond to the Government's Sur-Reply, and Motion to File Second Attorney Declaration of Ongoing Work *Ex Parte*, Under Seal, so that it can fully consider all of the issues presented (Dkt. #289; Dkt. #295; Dkt. #300; Dkt.

#301).[1] The Court will now consider Akkad's Motion for Continuance, Motion to Dismiss the Superseding Indictment, and Motion to Sever the Superseding Indictment (Dkt. #281).

## I.    Akkad's Motion for Continuance

Akkad has raised a variety of arguments to support his request for another continuance, primarily stemming from his belief that he will be prejudiced by proceeding to trial on the Superseding Indictment without additional time to prepare his defensive strategy (Dkt. #281; Dkt. #287; Dkt. #289; Dkt. #295; Dkt. #300; Dkt. #301). The Government's responds that Akkad will not be prejudiced and that he has had plenty of time to prepare for his defense for trial as no new evidence has arisen to support the charges in the Superseding Indictment (Dkt. #286; Dkt. #290). To determine whether Akkad's arguments warrant a continuance, the Court will look at the totality of the circumstances in this case and apply the Fifth Circuit's eight factor test. *See Ahsley*, 128 F.4th at 654–55; *Sheperd*, 27 F.4th at 1085–87.

### A.    Time for Trial Preparation

Akkad's Motion for Continuance and Reply primarily focus on the need for additional time to prepare his defense at trial (Dkt. #281 at pp. 3–5; Dkt. #287 at pp. 4–6). The Government's Response and Sur-Reply argue that ample time for trial preparation has occurred over the course of the past two and a half years since the Original Indictment (*See* Dkt. #284 at pp. 6–9; Dkt. #290 at p. 1). As part of its argument, the Government notes that no additional evidence has been used

---

[1] The Court is granting these Motions to give Akkad the benefit of the doubt. However, the Court questions whether an *ex parte* filing of defense strategy and ongoing work progress is the appropriate procedure given the lack of Fifth Circuit precedent on the issue. The Court further notes that the cases cited by Akkad do not fully address the reasoning behind allowing such an *ex parte* filing in support of a motion for continuance, nor whether it is the proper procedure (*See* Dkt. #287; Dkt. #289 at pp. 4–5; Dkt. #300; Dkt. #301 at pp. 1–2). *See U.S. v. Coulter*, 2019 WL 1575630 (W.D. Okla. April 11, 2019) (allowing *ex parte* filing for continuance pursuant to a local rule); *U.S. v. Steele*, 2010 WL 4117092 (D. Idaho Oct. 18, 2010); *U.S. v. Council*, 2018 WL 7822135 (D.S.C. Oct. 31, 2018).

for the expansion of Count 2 and to the four prior continuances already granted in this case (Dkt. #284 at pp. 6–9; Dkt. #290 at p. 1). The Court agrees with the Government.

The facts of this case have not changed since they were disclosed. Akkad has had access to those documents since their disclosure. Further, the Superseding Indictment does not add an additional Count, nor does it base its allegations on new evidence—in fact, all parties agree that it is based on evidence that has already been disclosed (Dkt. #286 at p. 6; Dkt. #287 at p. 3). Akkad's complaint is that he now must review the voluminous evidence to attempt to rebut the Government's argument that he conspired to money launder by concealment over the additional four years (Dkt. #281 at pp. 2–3). While Akkad's defensive strategy may change given the fact that the Government has now explicitly stated it will focus on his transfer of funds as concealment money laundering, those changes are not sufficient to create an impossible environment for his counsel to prepare for trial. *See Ashley*, 128 F.4th at 655 (upholding the denial of continuance when two additional counts were added in a superseding indictment less than three weeks before trial because the new counts were based on the same operative facts alleged in a prior indictment).

When reviewing the changes between the Original Indictment and Superseding Indictment, it becomes clear why Akkad's request for more time falls flat. As has already been noted, the specificity and temporal expansion of Count 2 in the Superseding Indictment are based on evidence disclosed in this case (Dkt. #286 at p. 6; Dkt. #287 at p. 3). Further, in the Government's Expert Witness Notice and Amended Expert Witness Notice, the Government stated Special Agent Leazer would testify about different forms of money laundering "including concealment" (Dkt. #205 at p. 5; Dkt. #273 at p. 5). While the Government did not elaborate on the specifics of concealment as applied Akkad at that time, Defendants' Joint Motion to Exclude

Government's Experts assumed that the testimony related to concealment would be "irrelevant" to the conspiracy charge (Dkt. #211 at p. 5 n.2). However, Defendants' mistaken assumption about the relevancy of testimony is not grounds for a continuance. Even the Original Indictment suggested that concealment would be at issue by stating that payments were made were made to ETS employees to "buy silence" and "purchase loyalty" (Dkt. #1 at ¶ 24).

Additionally, precedent from the Fifth Circuit supports the determination that the trial preparation factor weighs in favor of denying continuance. In *U.S. v. Ashley*, the Fifth Circuit found that a superseding indictment raising two new counts that could warrant life in prison filed less than three weeks before trial did not create concerns of reduced trial preparation time because the new counts were based on the same operative facts from a prior indictment. 128 F.4th at 655. In *U.S. v. Sheperd*, the Fifth Circuit found that three-and-a-half weeks was sufficient time for trial preparation for an attorney taking over the case for trial. 27 F.4th at 1085. In *U.S. v. Lewis*, it upheld denial of a motion for continuance in a case involving ten defendants and voluminous discovery where counsel was appointed only a week-and-a-half before trial. 476 F.3d 396, 387 (5th Cir. 2007).

This Court has also reached consistent results regarding the time necessary for trial preparation after a superseding indictment has been filed. *See U.S. v. Okeke*, No. 4:21-cr-253, 2024 WL 3891807, at *4 (E.D. Tex. Aug. 21, 2024) (refusing to grant a new trial on the basis of a denial of a motion for continuance on the claim that the Government "dumped several gigabytes" of evidence on the defendant less than a month before trial); *U.S. v. Rider*, No. 4:20-cr-232, 2023 WL 2072088, at *11 (E.D. Tex. Feb. 17, 2023) (finding no harm from a denial of a continuance because the Court granted multiple continuances delaying trial by two years and finding that the defendant had plenty of time to prepare his defense); *See Ashley*, 128 F.4th at 645; 654–56.

In sum, Akkad has had ample time to review the documents and prepare his defense to Count 2 of the Superseding Indictment. To the extent that he changes his defensive strategy based on the expansion of time and the specificity, Akkad has had since March 5, 2025 (nearly an entire month before trial), to adequately prepare that defense. *See Ashley*, 128 F.4h at 655. Akkad will not have to review any new discovery because the Superseding Indictment is based on the same operative facts and disclosed evidence as the Original Indictment (*See* Dkt. #1; Dkt. #274; Dkt. #286 at p. 6; Dkt. #387 at p. 3). Further, he has been in possession of the evidence that support the Superseding Indictment's charges of concealment since the Government disclosed that evidence to him (*See* Dkt. #1; Dkt. #274; Dkt. #286 at p. 6; Dkt. #387 at p. 3). Accordingly, the Court finds that the first factor weighs in favor of denying Akkad's Motion for Continuance.

### B.    Defendant's Role in Shortening Time Available

Akkad played a role in the Government's delay in filing the Superseding Indictment. In January 2023, approximately one month after Hall Mandichak, Lynch, and Nguyen pleaded guilty to conspiracy to commit wire fraud, Akkad transferred over $12 million into a bank account solely in his wife's name (Dkt. #127; Dkt. #128; Dkt. #133; Dkt. #274 at ¶ 28; Dkt. #286 at pp. 1, 3, 9–10). As the Government notes in its Response, Akkad did not alert the Court to, or receive approval for, the transfer of over $12 million (Dkt. #95; Dkt. #286 at p. 3).[2] As a result of the undisclosed transfer, the Government did not learn about it until some point in the Fall of 2024 (Dkt #286 at p. 3; Dkt. #287 at pp. 2–3, Dkt. #287–2). When the Government learned of the transfer, it issued a subpoena to Truist Bank on September 9, 2024 (Dkt. #287–2). On December 30, 2025, the

---

[2] The Government notes that this transfer was made in violation of Akkad's pretrial release conditions ((Dkt. #95; Dkt. #286 at p. 3).

Government applied for a seizure warrant to seize the account (Dkt. #289–1). After receiving the warrant and seizing the account, the Government presumably took all of its evidence to the Grand Jury again to receive the Superseding Indictment to include Akkad's actions after his co-defendants pleaded guilty (Dkt. #274). In response to these arguments, Akkad faults the Government for delaying to supersede the Indictment until six months after it obtained the account records (Dkt. #287 at pp. 2–3).

The Defendant's role in shortening the time available looks to the defendant's actions in relation to how those actions impacted the time constraints the defendant is complaining of. *See Sheperd*, 27 F.4th at 1085–86 (looking at how the defendant did not create a conflict of interest that required her attorney to step down, but that she did delay in hiring her second attorney); *Boukamp*, 105 F.4th at 747–48 (finding the factor weighed against continuance because the *pro se* litigant had gone through multiple attorneys before proceeding *pro se* and admitted he was the problem that caused his counsel to continually change). Ultimately, the Court finds that this factor leans in favor of denying a continuance.

While it is true that the Government *may* have been able to supersede the Original Indictment sooner, the possibility of seeking a Superseding Indictment sooner is only part of the consideration. Akkad played a role in the delay by transferring over $12 million into his wife's bank account without the Court's approval or the Government's knowledge (Dkt. #274 at ¶¶ 26–28). The Court will not fault the Government for how it managed its investigation, especially when it did not receive the seizure warrant for the account until three months ago (*See* Dkt. #289–1). *See Town of Newton v. Rumery*, 480 U.S. 386, 396 (1987). Thus, even though the Superseding Indictment was filed twenty-seven days before trial, the Court finds that Akkad played a role in

15

delaying the Government's investigation. Thus, the Court finds that this factor leans in favor of denying continuance.

### C.    Prejudice from Denial

Akkad's Motion and Reply both claim that he will be prejudiced by the denial of a continuance due to Government's filing of the Superseding Indictment less than a month before trial (*See* Dkt. #281; Dkt. #287). However, the primary discussion of prejudice comes down to a claim that the expansion of Count 2, by four years has made it difficult for the defense to prepare for trial and evaluate alternative defensive trial strategies (*See* Dkt. #281; Dkt. #287). The Court has already dealt with the issues of trial preparation in section I.A and found that the factor weighed in favor of denying continuance. Thus, the Court incorporates the above reasoning here. *Supra* Analysis Section I.A.

Looking more specifically at Akkad's claims, the primary issue is that he claims that he needs a continuance to review the additional four years of documents, as well as to hire experts (Dkt. #281 at p. 3; Dkt. #287 at pp. 5–6). While the Court understands counsel's desire to further investigate and prepare for trial, especially considering the Government's specific allegations of Akkad's concealment by transferring over $12 million, the Court has previously granted four continuances in this case (Dkt. #101; Dkt. #147; Dkt. #179; Dkt. #243; Dkt. #274 at ¶ 28). Further, Akkad's transfer of funds to his wife occurred during the pendency of this suit, while his counsel was retained (*See* Dkt. #286 at p. 3).

It is unclear from the pleadings whether Akkad's counsel was aware of the transfer. Regardless of whether his counsel was aware of the transfer or not, the Court finds that any prejudice to Akkad resulting from the four-year expansion of Count 2 is because of Akkad's own actions. In the event Akkad's counsel knew of the transfer before the Superseding Indictment, the

Court finds that any failure to prepare a defensive strategy regarding the transfer is counsel's own fault. If counsel knew of the transfer, they were on notice of Akkad's actions and should have acted accordingly in trial preparation. However, if Akkad did not inform his counsel of the transfer, and his counsel became aware of it through the Superseding Indictment, the Court finds that any prejudice to Akkad was self-inflicted by concealing the transfer from the Court, the Government, and his own counsel. In short, regardless of if Akkad's counsel knew of the transfer of funds when it occurred or when the Government filed the Superseding Indictment, a denial of continuance will not prejudice Akkad.

Furthermore, the case has been pending for over two years, four continuances have previously been granted, discovery is complete, the Superseding Indictment was filed only a few days shy of the one-month mark, and no new evidence was used to receive the Superseding Indictment (*See* Dkt. #1; Dkt. #101; Dkt. #147; Dkt. #179; Dkt. #243; Dkt. #274; Dkt. #286; Dkt. #287). The Fifth Circuit has found a lack of prejudice in a denial of continuance in similar cases. *See Lewis*, 476 F.3d at 387 (finding a lack of prejudice when defense counsel only had ten days to prepare in a case with ten defendants and voluminous discovery); *Sheperd*, 27 F.4th at 1086 (finding the prejudice factor neutral because the withdrawal of defendant's first attorney for a conflict was adverse to her, but her second attorney was able to fully defend her); *Ashley*, 128 F.4th at 655 (upholding this Court's denial of continuance and finding no prejudice to the defendant when the Superseding Indictment added two counts that carried life sentences less than three weeks before trial because the operative facts in those counts were the same as in previously presented counts). Accordingly, the Court finds this factor weighs in favor of denying continuance.

### D.     Availability of Discovery from the Prosecution

As noted above in Section I.A, the Superseding Indictment is based on the same operative facts as the Original Indictment, no new discovery or review of documents from the Government is required, and Akkad is in possession of the documents the Government intends to use at trial (*See* Dkt. #1; Dkt. #274; Dkt. #286 at p. 6; Dkt. #387 at p. 3). *See Supra* I.A. Akkad argues that he requires a continuance "to gather and review documents showing the transactions in the relevant accounts and determining if there are documents that need to be subpoenaed and taking steps to locate and hire an expert in banking to review those documents and advise counsel on the signs of concealment" (Dkt. #281 at p. 3). The Government argues that the modified charge is based upon the same discovery as the Original Indictment, which Akkad has had access to since it was disclosed (Dkt. #286 at pp. 6–8, 12).

Even though Akkad has indicated he would like to further investigate the case and hire experts, the factor does not evaluate what a defendant would like to do in discovery, rather it looks at "the availability of discovery *from the prosecution*" (Dkt. #281 at p.3; Dkt. #287; Dkt. #289). *Ashley*, 128 F.4th at 655 (upholding the denial of continuance because the addition of two new counts in a superseding indictment less than three weeks before trial was only based on evidence previously disclosed) (emphasis added); *Boukamp*, 105 F.4th at 746 (finding reduced ability of *pro se* defendant to access prosecutions documents while incarcerated was not enough to warrant a continuance); *see also Sheperd*, 27 F.4th at 1085 (finding the factor weighed in favor of continuance because the defense attorney did not receive six out of fourteen discovery discs and was unable to access five of the ones he had until 10:00 pm the night before trial). Accordingly, because Akkad has access to all of the discovery in this case, and the Government did not rely on any new evidence

for the Superseding Indictment, the Court finds that this factor weighs in favor of denying continuance (Dkt. #286 at pp. 6–8, 12; Dkt. #287 at p. 3).

### E.    Complexity of the Case

The Court has previously recognized this case as complex (Dkt. #146). However, just because the case is complex does not mean that the factor weighs in favor of continuance. *See Lewis*, 476 F.3d at 387. Akkad has had the opportunity to prepare his defense for over two years (*See* Dkt. #1). Further, Courts have denied continuance where the defendant in a complex case had less than thirty days to prepare. *Lewis*, 476 F.3d at 387 (upholding the denial of a continuance when a defendant's new counsel only had ten days to prepare before trial in a complex case); *Sheperd*, 27 F.4th at 1086 (finding the complexity of the case factor neutral because the defendant's counsel was experienced in the type of case being prosecuted). The Court finds that the fifth factor is neutral because of the length of time Akkad has had to prepare for the case, the experience of his lead counsel (as discussed below in Section I.G.), and that the Government has not relied on any new evidence for the Superseding Indictment.

### F.    Adequacy of Defense at Trial

This factor is neutral as trial has not yet occurred.

### G.    Experience of the Accused's Attorney

The Court finds that the experience of Akkad's counsel weighs in favor of denying continuance. Akkad's lead attorney in this case represents that he has defended clients in a variety of complex, high-profile cases. David Gerger, *David Gerger*, Gerger Hennessy Martin Peterson, https://ghmfirm.com/attorneys/david-gerger/ ("Complete Acquittal of the BP engineer tried for pollution and manslaughter in the Deepwater Horizon blowout; . . . Representing the CFO of Enron in his criminal, civil, SEC and other ordeals; . . . Successful defense of the Metal Building

Insulation Price Fixing trial."). Accordingly, even though Akkad's defense team only has twenty-seven days to prepare its defense for the changes made in the Superseding Indictment, that defense is still based on the same facts and evidence as the Original Indictment (Dkt. #286 at p. 6; Dkt. #287 at p. 3). The Court finds that the experience of Akkad's legal team in handling complex cases weighs in favor of denying continuance.

### H.    Timeliness of the Motion

Akkad's Motion for Continuance was filed on March 10, 2025, a mere five days after the Government filed the Superseding Indictment (*See* Dkt. #274; Dkt. #281). Thus, the Court finds that Akkad's Motion is timely, and the factor weighs in favor of continuance.

After reviewing the factors, the Court finds that the totality of the circumstances, and the majority of the factors, weigh in favor of denying continuance. The Court notes that part of its analysis relies on the fact that multiple, months-long continuances have already been granted before the current Motion and no new evidence was utilized to receive the Superseding Indictment (Dkt. #101; Dkt. #147; Dkt. #179; Dkt. #243; Dkt. #286 at p.9; Dkt. #287 at p. 3).[3] Accordingly, the Court denies Akkad's Motion for Continuance.

## II.    Akkad's Motion to Dismiss Superseding Indictment

Akkad claims that if the Court denies his Motion for Continuance, the Court should dismiss the Superseding Indictment because the Government unnecessarily delayed in filing it for crimes

---

[3] While not in-and-of itself a factor directly considered in continuance analysis, the Court also notes its own trial schedule over the next few months is currently full, which would render a thirty-day continuance and rescheduling of a planned three-week trial logistically impossible for the Court to achieve. Any continuance of this case will likely lead to another multi-month-long delay. *See Boukamp*, 105 F.4th at 748 n.8 (citing *U.S. v. Sarabia*, No.20-0438, 2021 WL 3775210, at *2 (5th Cir. Aug. 25, 2021) (per curiam) ("The district court's insistence on an expeditious trial, after granting several continuances and recognizing that further rescheduling would interfere with other scheduled trials, was a valid interest."); *U.S. v. Pollani*, 146 F.3d 296, 272 (5th Cir. 1998) (noting that the district court had a valid "interest in maintaining its docket and keeping cases on schedule.")).

that allegedly occurred in January 2023 (Dkt. #281 at p. 6). As part of its argument, Akkad claims that he cannot adequately prepare a defense in the required time and will be prejudiced if trial proceeds on the Superseding Indictment (Dkt. #281 at pp. 6–7). The Government responds by arguing that Akkad cannot show serious prejudice because he concealed the transfer of over $12 million from the Government and the Court (Dkt. #286 at p. 10). As a result, the Government's filing the Superseding Indictment when it did was reasonable because it first had to discover the transfer during its investigation before it could seek the Superseding Indictment (Dkt. #286 at pp. 10–11). Further, the Government argues that, even though it expanded the time frame of Count 2, the underlying facts for the change are the same as those used in the Original Indictment and have been disclosed to Akkad (Dkt. #286 at pp. 11).

In his Reply to the Government's Response, Akkad argues that the Government essentially sat on its hands when deciding to seek the Superseding Indictment because it had the relevant bank records before the Fall of 2024, and at the latest by September 4, 2024 (Dkt. #287 at pp. 2–3). He argues that the Government's six-month delay in seeking to supersede the Original Indictment was an unnecessary delay and the Superseding Indictment should be dismissed as a result (*See* Dkt. #287 at pp. 2–3). Further, he argues that the Government provided no notice before the Superseding Indictment that the bank transfers would lead to a charge for concealment money laundering because the Government never provided any specific facts or arguments that it would pursue that avenue (Dkt. #287 at p. 3).[4] Finally, he reiterates his argument that he will be

---

[4] Akkad also contends that the Fifth Bill of Particulars seeking to seize the account was not specific enough to put him on notice of the concealment charges because it listed his wife's Truist bank account along with the rest of the property and gave no indication that it would be treated differently (Dkt. #287 at p. 3).

prejudiced in his trial preparations by the addition of four years to Count 2 due to the length of time and number of records to review (Dkt. #287 at pp. 3–6).

The analysis for prejudice necessary to dismiss a superseding indictment is similar to that of determining whether denial of a continuance is appropriate. *Compare Sheperd*, 27 F.4th at 1085–87, *with Trahan*, 333 Fed. App'x at 819. To the extent that Akkad argues for the dismissal of the Superseding Indictment based on prejudice, the Court refers to its analysis in Section I. Additionally, the Fifth Circuit has refused to dismiss superseding indictments filed with less than twenty-seven days before trial. *See e.g.*, *Millet*, 559 at 257–58 (affirming the denial of a motion to dismiss a superseding indictment filed six days before the start of trial).

Accordingly, the Court holds that dismissal of the Superseding Indictment is not necessary in this case. The Superseding Indictment arises from the same operative facts as the Original Indictment, no new evidence was used by the Government in seeking the Superseding Indictment, and Akkad was given the Superseding Indictment twenty-seven days before trial (*See* Dkt. #274; Dkt. #286 at p. 12; Dkt. #287 at p. 3). Therefore, the Court denies Akkad's Motion to Dismiss the Superseding Indictment.

## III.    Akkad's Motion to Sever Superseding Indictment

Akkad's Motion to Sever makes a passing invocation of Rule 14(a)'s severance ability as it, spending his time arguing for dismissal of the Superseding Indictment under Rule 48(b) (Dkt. #281 at p. 6). The Government's Response only focuses on Akkad's request to dismiss the Superseding Indictment (*See* Dkt. #286 at pp. 9–12). Akkad's Reply similarly focuses only on his arguments for dismissing the Superseding Indictment (*See* Dkt. #287). The Court understands why the Parties did not provide much discussion of severance of the charges under Rule 14(a)—it is because the same analysis is used for both—whether the defendant is prejudiced by the charges under the

superseding indictment. *See U.S. v. Erwin*, 793 F.2d 656, 665 (5th Cir. 1986) ("the denial of a severance motion will be reversed only for abuse of discretion upon a showing of specific and compelling prejudice to the defendant); *Ahsley*, 128 F.4th at 654 (the denial of a motion to continue must result in specific and compelling, or serious prejudice); *Trahan*, 333 F. App'x at 819. Accordingly, the Court incorporates its analysis from Sections I and II in its evaluation of Akkad's Motion to Sever. In short, the Court denies Akkad's Motion to Sever because it has already found that no prejudice exists from going to trial on the Superseding Indictment. *See Supra* Analysis Sections I–II.

## IV.    Ellingsen's Motion to Sever

Ellingsen filed a Motion in Opposition to Continuance and Motion to Sever, asking the Court to sever the case and allow her to proceed to trial if it grants Akkad's Motion for Continuance (Dkt. #282). As the Court has denied Akkad's Motion for Continuance, the Court denies Ellingsen's Motion to Sever as moot.

## CONCLUSION

It is therefore **ORDERED** that Defendant Akkad's Motion for Continuance Based Upon Return of Superseding Indictment or in the alternative, to be Tried on Original Indictment or to Dismiss or Sever Last Minute Charges (Dkt. #281) is hereby **DENIED**. It is FURTHER **ORDERED** that Opposition of Defendant Gina Ellingsen to Continuance and Motion to Sever (Dkt. #282) is hereby **DENIED as moot**. Finally, Defendant Akkad's Motion to File Defense Declaration *Ex Parte* and Under Seal (Dkt. #287; Dkt. #289), Corrected Motion for Leave to File Response to Sur-Reply on Continuance (Dkt. #295), and Motion to File Second Attorney Declaration Ongoing Work *Ex Parte*, Under Seal (Dkt. #300; Dkt. #301) are hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 21st day of March, 2025.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE