IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:22-CR-162-ALM-BD |
| | § | |
| EDWARD WALSH VAUGHAN (1) | § | |
| HADI AKKAD (2) | § | |
| GINA ELLINGSEN (6) | § | |
| | § | |

**U.S. BANK N.A. AND ELAVON, INC.'S MOTION TO QUASH DEFENDANT AKKAD'S SUBPOENA FOR WITNESS TRIAL TESTIMONY**

Third parties U.S. Bank National Association ("U.S. Bank N.A.") and Elavon, Inc. ("Elavon") (collectively, "U.S. Bank"), by counsel, respectfully submit this Motion to Quash Defendant Akkad's ("Defendant") Subpoena for Witness Trial Testimony.

On March 20, 2025, less than two weeks before trial, Defendant issued a trial subpoena summoning third-party U.S. Bank's counsel, Michael Dry, to testify at Defendant's trial. *See* Ex. A. Testimony from Mr. Dry is irrelevant and inadmissible in this case. Requesting it is unreasonable and oppressive, and should be denied for the reasons discussed below.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(a) governs subpoenas compelling testimony and requires that such subpoenas "include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies." Fed. R. Crim. P. 17(a). Rule 17 also provides that upon a "motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). While this portion of the rule falls under the heading pertaining to subpoenas *duces tecum* and the Rule "does not explicitly address the quashal or modification of a Rule 17(a) subpoena, courts 'routinely have entertained motions seeking such relief and decided them by reference to comparable principles [to those

governing Rule 17(c) subpoenas].'" *United States v. Bebris*, 4 F.4th 551, 559 n.5 (7th Cir. 2021) (quoting *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000)); *see United States v. Avalos-Martinez*, 299 F.R.D. 539, 543 (W.D. Tex. 2014) (granting a party's motion to quash a subpoena to compel testimony).

Accordingly, a party who issues a Rule 17(a) subpoena must satisfy the standard discussed by the Supreme Court in *Nixon*, namely that the requested testimony is relevant, admissible, and material. *See Stern*, 214 F.3d at 17 (discussing that "[r]oughly the same standard" from *United States v. Nixon*, 418 U.S. 683 (1974), applies to subpoenas compelling the attendance of witnesses).

First, the requested testimony must have "real relevance to the particular counts for which [the defendant] was charged." *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005); *see also United States v. Keogh*, No. CR-17-290-D, 2022 WL 129464, at *1 (W.D. Okla. Jan. 12, 2022) (explaining the Supreme Court's requirement that a defendant seeking compulsory attendance of a witness must show the witness's testimony is "relevant and material."). In this context, the evidence must be material, meaning it " 'might be sufficient to create a reasonable doubt' about guilt." *Keogh*, 2022 WL 129464, at *1 (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 68 (1982)); *see also Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) ("[M]aterial evidence is that which is exculpatory—evidence that if admitted would create reasonable doubt that did not exist without the evidence.").

Second, a movant must make a "sufficient preliminary showing that [the requested testimony] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700.

Third, a subpoena request for testimony must not turn into a "fishing expedition." *Id.*; *see Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) (finding a party's subpoena invalid because it was "not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up"). Indeed, "[w]here the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." *Bebris*, 4 F.4th at 559 (citing *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973)).

This inquiry is the same whether the individual challenging the subpoena is a party or non-party. *See generally* Fed. R. Crim. P. 17(c)(2) advisory committee's note to 2008 amendment (discussing the application of Rule 17 to victims and third parties).

## ARGUMENT

### A. Defendant Akkad's Subpoena Is an Improper Attempt to Gather Irrelevant and Inadmissible Testimony

*First*, the Defendant's subpoena to Mr. Dry is an unwarranted attempt to introduce evidence that is entirely irrelevant to the charges outlined in the indictment or any legitimate defense, so fails to satisfy even the first prong of *Nixon*. To prove a conspiracy to commit wire fraud under 18 U.S.C. § 1349, the Government must show beyond a reasonable doubt that: (1) two or more persons made an agreement to commit wire fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement with the intent to further the unlawful purpose. *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020). To prove a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the Government must prove: (1) there was an agreement between two or more persons to commit money laundering and (2) the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose. *United States v. Cessa*, 785 F.3d 165, 173 (5th Cir. 2015). Mr. Dry's involvement in the case is limited to his representation of U.S. Bank after the FBI investigation went overt in early

2019, so it is facially unclear how Mr. Dry's testimony could possibly relate to any of these elements. And neither Defendant Akkad's subpoena nor discussions with defense counsel have proffered any relevant subject matters. Defendant Akkad's subpoena also does not seek any specific documents from Mr. Dry nor otherwise indicate what information Defendant Akkad believes Mr. Dry has related to any element of the offense with which Defendant Akkad has been charged or any defense to those charges. Without such specificity, U.S. Bank and Mr. Dry are left to speculate as to what relevant subjects Defendant Akkad would anticipate asking him at trial.

Indeed, undersigned counsel met and conferred with Defendant Akkad's counsel on March 24, 2025, to inquire about the purpose of this subpoena. Akkad's counsel stated that he planned to question Mr. Dry regarding communications and representations he made on behalf of U.S. Bank to the government. But requests for testimony about these same subjects from a victim's counsel have been quashed under virtually identical circumstances. In *United Sates v. Keogh*, a defendant sought to call an attorney for a nonparty that assisted the government in its investigation and later filed a civil complaint against the defendant. No. CR-17-290-D, 2022 WL 129464, at *1 (W.D. Okla. Jan. 12, 2022). The defendant asserted that he wished to ask the attorney about "his involvement in the criminal investigation that led to [the] prosecution" because he believed the attorney "somehow influenced or fueled the investigation by providing information developed during [his] own investigation and civil litigation, and perhaps pressured the government to pursue the charges against Defendant." *Id.* at *3. Defendant claimed that the attorney and his law firm "on nine occasions . . . provided documents to FBI agents either voluntarily or in response to a grand jury subpoena" and pressured the government to charge the defendant. *Id.*

The court held that such topics and communications were not relevant or material to the charges. In quashing the subpoena, the court concluded that "[d]efendant provide[d] no

justification for making [the nonparty attorney's] communications with the government part of [d]efendant's jury trial regarding his guilt or innocence of the charges in the Superseding Indictment." *Id.* The court further explained that "the function of the jury trial is to determine Defendant's guilt or innocence of the government's charges against him," so evidence that a nonparty attorney, who also pursued civil litigation against defendant, "attempted to influence the prosecutors' decisions or conduct during the investigation is irrelevant to that question and not proper trial evidence." *Id.*

Such is the case here. To the extent that Defendant Akkad seeks to question Mr. Dry about his conversations with the Government prior to or even after the indictment was returned against him, he has not established how those conversations would have any relevance to his guilt or innocence, nor to any cognizable defense. To the extent that Mr. Akkad attempts to argue that Mr. Dry's conversations with the prosecution constitute or evidence "improper prosecutorial conduct," the court in *Keogh* also held that this "would not present a jury issue." *Id.* (citing *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury"); *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir. 1973) (allegations of discriminatory prosecution did not raise a defense to be presented to or decided by the jury)). The court explained: " 'In our [criminal justice] system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' " *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Thus, Defendant Akkad will be unable to show that Mr. Dry's proposed testimony is relevant to the charges he faces or any defense to them, and therefore, the subpoena should be quashed on these grounds alone.

*Second*, the Defendant's subpoena to Mr. Dry is an unjustified attempt to introduce evidence that is entirely inadmissible to the charges outlined in the indictment or any legitimate defense, so fails to satisfy even the second prong of *Nixon*. Defendant has not proffered how his subpoena will offer any admissible testimony as he must under *Nixon*, as much, if not all, of Mr. Dry's testimony would be inadmissible because it is protected by attorney-client and attorney-work product privileges.

Mr. Dry was retained by U.S. Bank in early 2019 as a result of the FBI's investigation into ETS after it was acquired by Elavon, a wholly owned subsidiary of U.S. Bank. Thus, his knowledge of the facts of this case is based on his representation of the victim, U.S. Bank and Elavon, over the last six-plus years in response a government inquiry and relates to his legal advice to his client in response to that investigation, so his testimony about his representation would often or completely be protected from disclosure. For instance, Defendant certainly cannot ask about any communications between Mr. Dry and any employees at U.S. Bank or Elavon because such communications were made to secure legal advice for the corporation in the wake of the FBI's investigation and are privileged. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (holding that communications made by corporate employees to counsel for the corporation to secure legal advice were protected). And he cannot ask about any memoranda, notes, or work product prepared during the course of that investigation because such material is attorney work product and is protected from disclosure. *See id.* at 400–02 (discussing the attorney-work product privilege); *see also Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying

the orderly prosecution and defense of legal claims."). And he certainly cannot seek to admit hearsay statements made by other persons, including government attorneys or investigating agents to Mr. Dry even assuming such statements were asserted to be relevant. *See* Fed. R. Evid. 801; *United States v. Montes-Salas*, 669 F.3d 240, 251 (5th Cir. 2012) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (citation omitted)). In short, Defendant Akkad must at the very least be able to proffer what admissible testimony he would seek to elicit from Mr. Dry to satisfy the admissibility prong of *Nixon*. But on this point, Akkad has failed to proffer any admissible topics, communications, discussions, or events that he would seek to question Mr. Dry as he must. On this basis alone, Defendant Akkad's subpoena should be quashed. Finally, even matters not otherwise protected under privilege or *Upjohn* ought to be quashed due to "the overall need to protect the attorney-client relationship." *United States v. Rico*, 619 F. App'x 595, 601 (9th Cir. 2015). After excluding any testimony that is clearly inadmissible due to various attorney-client privilege and work-product doctrines, Mr. Dry's contributions to the trial would be, at most, minimal. However, as discussed in Section B below, the negative effect his testimony could have on his representation of U.S. Bank is considerable. In circumstances such as these, courts can give weight to the need to maintain the attorney-client relationship and quash subpoenas that threaten it. *See id.* (discussing the weighing of the "overall need to protest the attorney-client relationship" when considering a motion to quash served on an attorney).

*Third*, at its core, Defendant's subpoena to Mr. Dry is an unfounded attempt to engage in a fishing expedition for <u>nonmaterial evidence.</u> As previously discussed, Defendant Akkad's subpoena is not specific as it only compels Mr. Dry's testimony at trial without any further information. After accounting for all of the potential testimony that would be precluded based on

hearsay grounds and *Upjohn*'s protection for attorney-client privilege and attorney-work product protection during the course of an internal investigation, it is hard to imagine what possible relevant testimony Defendant Akkad could anticipate eliciting from Mr. Dry. As such, this subpoena is nothing more than a last minute fishing expedition and ought to be quashed.

**B. Defendant Akkad's Subpoena Is Unreasonable and Oppressive.**

Defendant Akkad's subpoena, issued on the eve of trial to the victim's counsel, is at bottom unreasonable and oppressive. It is unclear what relevant, admissible, and material information Mr. Dry could possibly have and be able to testify to that Defendants' could not seek from other witnesses who do not represent a victim in this case. *See United States v. Dornsbach*, No. 0:22-CR-00048, 2023 WL 3496553, at *4 (D. Minn. May 17, 2023) ("[T]he district court may properly consider, among other factors, whether compliance would likely destroy the attorney-client relationship, and whether the information sought from the lawyer is already available from other sources." (citing Fed. R. Crim. P. 17(c))). At this point, less than two weeks before trial, Mr. Dry has helped prepare witnesses the Government plans to call and potentially a witness Defendants themselves have called to testify. If Mr. Dry were made a witness to this case, he would need to dedicate time preparing his own testimony in addition to representing current and former employees of his client, which would negatively affect his ability to represent U.S. Bank. *See In re Grand Jury Matters*, 751 F.2d 13, 17 (1st Cir. 1984) (affirming the lower court's decision to quash a subpoena issued to counsel "because of the effect the timing of the subpoenas could have on the attorneys' ability to prepare and present their clients' defenses in the pending state criminal action."). Further, if made a Defense witness, Mr. Dry may be sequestered during trial which would compromise his ability to represent U.S. Bank, further harming the attorney-client relationship. In short, forcing Mr. Dry to testify at trial would hinder his ability to represent U.S. Bank, so Defendant Akkad's subpoena should be quashed on this basis.

## CONCLUSION

For the foregoing reasons, U.S. Bank respectfully asks the Court to quash Defendant's trial subpoena for Mr. Dry's testimony.

Dated: March 24, 2025

Respectfully submitted,

*/s/*

Daniel T. Wallmuth (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Ave. NW, Ste. 500 West
Washington, DC 20037-1701
T: 1.202.639.6762 | F: 1.202.879.8852
dwallmuth@velaw.com

*Counsel for U.S. Bank N.A. and Elavon, Inc.*

## CERTIFICATE OF CONFERENCE

U.S. Bank's counsel met and conferred with Defendants Akkad and Vaughan's counsel on March 24, 2025, regarding the merits of this Motion. Defendants Akkad and Vaughan's counsel oppose the relief sought in this Motion.

*/s/*
Daniel T. Wallmuth

## CERTIFICATE OF SERVICE

This pleading was filed and distributed to all counsel of record through the Court's ECF system.

*/s/*
Daniel T. Wallmuth