# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATS OF AMERICA § | |
| § | |
| v. § | Case No. 4:22-CR-162 |
| § | Judge Mazzant |
| EDWARD WALSH VAUGHAN (1) § | |
| HADI AKKAD (2) § | |
| GINA ELLINGSEN (6) § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is United States' Motion in Limine #8 Similar Practices by Other Processor Companies (Dkt. #312 at p. 6) and United States' Motion in Limine to Preclude or Limit the Expert Testimony of David Leppek (Dkt. #313). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds that the Motions should be **GRANTED**.

## BACKGROUND

The facts of this case are laid out in the Court's Order on Defendant Akkad's Motion for Continuance and the Court incorporates them here (Dkt. #302). On August 9, 2024, Defendants filed their Joint Fed. R. Crim. P. 16(b)(1)(C) Notice for David Leppek, outlining the various opinions and bases for those opinions (Dkt. #233). On March 24, 2025, the Government filed its Motion in Limine and its Motion to Limit or Preclude the Expert Testimony of David Leppek (Dkt. #312; Dkt. #313). The Government primarily challenges the admission of evidence regarding the industry practice among card-processors (Dkt. #312 at p. 6; Dkt. #313). On March 26, 2025, Defendants filed their Response to both Motions (Dkt. #318; Dkt. #320). On March 28, 2025, the Court held a Pretrial Conference and took the matter under advisement (Dkt. #325; Dkt. #327).

On March 29, 2025, the Government filed its Reply to Response (Dkt. #338). On March 30, 2025, Defendants filed their Sur-Reply to the Government's Reply (Dkt. #339).

## LEGAL STANDARD

Only relevant evidence is admissible at trial. FED. R. EVID. 402. Evidence is relevant if it has a tendency to make a fact of consequence more or less probable than it would be without the evidence. FED. R. EVID. 401. However, not all relevant evidence is admissible. Under Rule 403, if the probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. FED. R. EVID. 403.

Evidence of industry customs and practices can be admissible in a criminal case. *See, e.g.*, *U.S. v. Christo*, 614 F.2d 486, 492 n.7 (5th Cir. 1980). However, industry customs and practices have been routinely excluded in the Fifth Circuit because it tends to distract from the primary questions in front of the jury—whether the actions of the defendants were in violation of the law and whether the defendants had the intent to violate the law. *U.S. v. Brooks*, 681 F.3d 678, 709 (5th Cir. 2012); *U.S. v. Arledge*, 553 F.3d 881, 894 (5th Cir. 2008). Thus, even if such evidence is relevant, the proponent must show how the evidence clears the hurdle of Rule 403 by establishing how the probative value of that evidence is not outweighed by the danger of confusing the issues or misleading the jury. *See Brooks*, 553 F.3d at 709; FED. R. EVID. 403. However, one thing is certain, merely pointing to similar actions occurring in the industry, and a defendant's choice to follow suit, is not admissible to negate a fraudulent intent. *See Brooks*, 553 F.3d at 709.

## ANALYSIS

The Government challenges the admissibility of four opinions from Defendants' expert David Leppek:

1. Because ISOs represent the acquiring bank, acquiring banks have an obligation to review and approve the contracts ISOs sign with merchants as well as the forming of the merchant statements.

2. The propriety of charging a markup on interchange.

3. Many ISOs during the period from approximately 2012 to 2018 charged markups that were embedded in interchange and that many ISOs used tiered or flat pricing structures that also did not differentiate between their own fees and the interchange fees.

4. That because interchange markups are an industry standard, comparatively speaking, ETS's markup was transparent.

(Dkt. #313) (citing Dkt. #233). The Government contends that these opinions are impermissible and should not be allowed at trial for the following reasons. First, shifting responsibility for merchant agreements is inappropriate and shifts the focus from Defendants actions to third parties (Dkt. #313 at p. 2). Second, focus on other ISOs and the industry practice calls for jury nullification because it seeks to have the jury acquit Defendants because all actors in the market were acting the same way (Dkt. #313 at p. 2). Third, even if the above areas of testimony are permissible, Leppek's testimony must be limited because it attempts to opine on the mental state of the Defendants in violation of Federal Rule of Evidence 704(b)—that they did not have the intent to defraud because they were acting like everyone else (Dkt. #313 at p. 3). Finally, even if the evidence is probative and otherwise permissible, the Court should limit the challenged testimony because its probative value is low and presents a high danger of confusing the issue and misleading the jury (Dkt. #313 at p. 3).

Defendants respond by arguing that Leppek's explanations of the banking industry will explain that ETS and Defendants could not unilaterally determine how the merchant statements were formatted, nor set fees (Dkt. #320 at pp. 6–7). Second, they argue that testimony regarding industry practice is admissible to negate the argument that Defendants had the requisite intent to defraud (Dkt. #320 at p. 8). Third, Defendants argue that Leppek's testimony does not violate

3

704(b) because of the Supreme Court's recent decision in *Diaz v. U.S.* (Dkt. #320 at pp. 9–10). Finally, Defendants argue that the testimony will not run afoul of Rule 403 because it is probative to explain Defendants' intent (Dkt. #320 at p. 11).

Ultimately, the Court agrees with the Government. For the most part, the major fight is over the admissibility of industry practices as an explanation for how Defendants charged the .3% fee (*See* Dkt. #313; Dkt. #320). Insofar as Defendants attempt to shift the focus to the obligations of acquiring banks, the Court struggles to see the relevance of those restrictions as to how it explains Defendants actions (*See* Dkt. #233; Dkt. #320) (explaining the agreements and obligations of ISOs and the acquiring banks). While the agreements and obligations are relevant to explain the nature of how things work in the credit-processing industry, Defendants' argument that they had to comply with the agreements is speculative and assumes their full compliance with those agreements (Dkt. #320 at pp. 6–7). Defendants cannot point to the obligations imposed on or by the acquiring banks to negate their own actions or intent. *See Alredge*, 553 F.3d at 894 (finding no abuse of discretion for excluding evidence that another attorney may have also engaged in or deliberately ignored fraud because it had no bearing on the defendant's actions and liability).

In short, the obligations of the acquiring banks is only relevant to explain the nature of ETS's structure, but it cannot show that Defendants actually followed and complied with those obligations. Nor can it show whether Defendants acted with fraudulent intent. *See Brooks*, 681 F.3d at 709. Additionally, the attempt to shift the focus onto the acquiring banks runs afoul of the prohibition against tacit jury nullification, as it seeks to imply that Defendants were not at fault and an uncharged third party is entirely to blame. *U.S. v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001). Thus, the Court limits Leppek's testimony regarding the responsibilities of

the acquiring banks because it is irrelevant, and even if it is relevant, its probative value is minimal such that the danger of confusing the issues and misleading the jury regarding Defendants actions warrants its exclusion. FED. R. EVID. 403.

As to the industry practices, the Court finds that the evidence is inadmissible in this case. In *U.S. v. Brooks*, the defendants sought to admit evidence relating to industry practice to establish a good faith defense because other energy companies had also submitted false data to reporting agencies. *Books*, 681 F.3d at 709. The Fifth Circuit found that the trial court did not abuse its discretion in excluding the evidence. *Id.* The Fifth Circuit found that the exclusion of industry practice evidence had little or no bearing on whether the defendants acted with fraudulent intent. *Id.* (citing *Arledge*, 553 F.3d at 894). In short, the evidence that other companies acted the same way was unrelated information that posed a threat of confusing the jury and detracting from the relevant information about the conduct of the actual parties. *Id.* (citing FED. R. EVID. 403).

Industry practice evidence is similarly inadmissible in this case. Here, Defendants are offering the testimony to attempt to negate the intent requirement (Dkt. #320 at pp. 7–9). Defendants cite to three cases to support the admissibility of industry practice, all of which are distinguishable from the case at hand (Dkt. #320 at pp. 7–9).[1] Pointing to industry practice in this

---

[1] Defendants first cite to a footnote in *U.S. v. Christo* to support their argument (Dkt. #320 at p. 8). *Christo* involved a mishandling of bank funds issue in the context of a jury charge. 614 F.2d at 492. However, the industry practice there involving an individual over drafting his bank account and how banks typically handle those situations. *Id.* Here, the Defendants are charged with conspiracy to commit wire fraud and money laundering, and their practices are different from over drafting a personal checking account (Dkt. #274). The second case cited is *U.S. v. Garber*, where the issue involved a novel tax question with facts distinct from this case. 607 F.2d 92 (5th Cir. 1992). The Court finds *U.S. v. Brooks* as more analogous to the issue presented in this case.

case will only serve to over complicate the issue of whether or not Defendants acted with a fraudulent intent. *See Brooks*, 681 F.3d at 709. Further, Defendants have not shown that the industry practice they will point to is in compliance with the law. *See id.* It very well may be that much of the industry is violating the law, which makes doing the same thing irrelevant to negate intent. *Id.* (not allowing evidence that it was common in the industry to falsely report data). Thus, the Court will exclude testimony related to industry practice.

While the Court has excluded the underlying basis for the expert testimony, the Court finds it necessary to address the implications of Rule 704(b) on this case. Rule 704(b) prohibits an expert from opining about whether a defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. FED. R. EVID. 704(b). The Defendants argue the comparison to the industry standards in this case is akin to the opinions the United States Supreme Court allowed in *Diaz v. U.S.* because Leppek will not directly state any conclusions regarding Defendants' mental states (Dkt. #320 at p. 10). 602 U.S. 525, 524–35 (2024). However, the Supreme Court's opinion only permitted a DEA agents testimony that most drug couriers know they are transporting drugs. *Id.* at 535. The Court held that testimony about most couriers left open the possibility that some couriers did not know what they were transporting. *Id.* at 535–36. However, the Court held that testimony that all people in a group act a certain way would still be inadmissible under Rule 704(b). *Id.*

---

In their Sur-Reply, Defendants cite to *U.S. v. Riddle*, as support for admitting industry practices as evidence to negate intent (Dkt. #339 at pp. 3–4). However, *Riddle* is also factually distinct from this case. In *Riddle*, a government lay witness was first given broad leeway to discuss banking industry practice. 103 F.3d 423, 430 (5th Cir. 1997). The Fifth Circuit found it was an error to preclude the defense expert from testifying because of the court gave the government's witness such broad discretion to testify to industry practices. *Id.* Here, Defendants are the only ones seeking to introduce evidence of industry practices. Thus, *Riddle* is also very different from the case at hand.

Here, the testimony is inadmissible because it seeks to use industry practice as an "everyone acts the same way," which would allow Leppek to essentially render his opinion on the mental states of the Defendants. The reliance on industry practice evidence seeks to lump Defendants in with everyone else in the industry, thus comparing their knowledge to "all" instead of "most." *See Diaz*, 602 U.S. at 535–36. Such testimony is not permitted by Rule 704(b). Accordingly, the Court grants the Government's Motion to Preclude Leppek's testimony regarding the four challenged opinions. The Court also grants the Government's Motion in Limine regarding industry practice evidence.

## CONCLUSION

It is therefore **ORDERED** that United States' Motion in Limine #8 Similar Practices by Other Processor Companies (Dkt. #312 at p. 6) and United States' Motion in Limine to Preclude or Limit the Expert Testimony of David Leppek (Dkt. #313) are hereby **GRANTED**. Leppek cannot testify to the four challenged opinions and Defendants may not introduce evidence of industry practices.

**IT IS SO ORDERED.**

SIGNED this 31st day of March, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE