IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22CR162 |
| | § | Judge Mazzant |
| EDWARD WALSH VAUGHAN (1) | § | |
| HADI AKKAD (2) | § | |

## UNITED STATES' MOTIONS IN LIMINE

Edward Walsh Vaughan and Hadi Akkad were tried by a jury on counts one and two of the First Superseding Indictment March 31 through April 16, 2025. Dkt. 345, 404. The jury was unable to reach a verdict on counts one and two as to Vaughan and on count one as to Akkad. Dkt. 404. This Court received a not guilty verdict on count two as to Akkad and declared a mistrial on all other counts. *Id.* This Court scheduled the pretrial conference and retrial for May 12, 2025. Dkt. 412.

### United States' Motions in Limine – the First Trial

The United States filed Motions in Limine before the first trial. Dkt. 312 (General Motions in Limine); 313 (Motion in Limine to Preclude or Limit the Expert Testimony of David Leppek). The Court made oral rulings on the United States' General Motions in Limine at the pretrial conference. Dkt. 325.

Before the trial began, the Court entered written orders on two specific issues. Dkt. 343, 344. This Court *denied* the United States' motion #10 (prohibited hearsay testimony, dkt. 312, p. 7). Dkt. 343. This Court *granted* the United States' Motions in Limine on Similar Practices by Other Processor Companies (dkt. 312, p. 6) and the United States'

Motion in Limine to Preclude or Limit the Expert Testimony of David Leppek (dkt. 313). Dkt. 344. This Court held Leppek would not be permitted to testify to four challenged opinions and the defendants would *not* be permitted to introduce evidence of *industry practices*. *Id.* Specifically, the Court ordered that Leppek would *not* be permitted to testify to the following four challenged opinions:

- "[B]ecause ISOs represent the acquiring bank, acquiring banks have an obligation to review and approve the contracts ISOs sign with merchants ("merchant agreements") as well as the formatting of the merchant statements." Dkt. 233 at 4.

- The propriety of "charging a markup on interchange." Dkt. 233 at 5.

- "Many ISOs during the period from approximately 2012 to 2018 charged markups that were embedding [sic] in interchange" and that "[m]any ISOs used tiered or even flat pricing structures that also did not differentiate between their own fees and the interchange fees." *Id.*

- After attempting to persuade the jury that interchange markups are an industry standard, Mr. Leppek would testify that, comparatively speaking, ETS's markup was "transparent." *See id.* at 5.

Dkt. 344.

The United States requests that this Court uphold and enforce the Court's previous oral (dkt. 325) and written limine orders (dkt. 343, 344) at the second trial. Specifically, the government points the Court to the following topics:

- **Impeachment of a witness with a statement that witness has neither written nor adopted as his or her own;**

- **Discussion of the victims' negligence;**

- **Argument about civil or administrative remedies;**

- **Victim's failure to respond to a victim questionnaire;**

- **Any statement or argument calling overtly or tacitly for jury nullification including, but not limited to, the following topics:**

    o Any discussion of nullification or invitation to contravene the law or this Court's instructions related to conspiracy or wire fraud;
    o Any testimony regarding the effect of these proceedings upon defendants' families or any appeal for pity for the defendants or their families;
    o Any argument that other people were not, or are not currently, charged with a crime, or any mention or argument concerning defendants in other matters who have been acquitted of similar charges;
    o Any argument, questioning, or discussion of the propriety of the government's charges in this case or the return of the indictments by the Grand Jury;
    o Any argument that the rate, fee or percentage or any type of charge or pricing Elevon/ U.S. Bank charged merchant clients related to the processing of any type of credit, debit or prepaid transactions was somehow "competitive" or "better" than other industry players.

- **Statements and arguments implying selective prosecution;**

- **Similar practices by other processor companies;**

- **Scope of cross-examination;**

- **Counsel's personal beliefs;**

- **Calls for sympathy including asking the jury to stand in the shoes of the defendant or his family;**

- **Defendants' family and children;**

- **Prison conditions;**

- **Sentence or punishment;**

- **Convictions or pending charges;**

- **Conduct of a witness outside Rule 609 and other bad acts;**

- **Previous rulings from this Court;**

- **Unrelated government misconduct, perceived or otherwise;**

- **Plea offers and negotiations with counsel;**

- **Prior "good" behavior of defendants and unapproved reputation and character testimony of defendants.**

### United States' Additional Motions in Limine – the Second Trial

The United States requests that this Court, before the beginning of the  evidence in the second trial, direct the parties not to mention, refer to, interrogate concerning, or bring to the attention of the jury in any manner, including during jury selection, opening statements, closing argument, or witness examinations—directly or indirectly—any of the additional below listed matters without first approaching the bench and obtaining a ruling on their admissibility.  The specific matters are as follows:

**(1) Declination to prosecute in other jurisdictions**

In the first trial, the Court granted this portion of the United States' Motion in Limine and ordered the defendants not to refer to the EDVA declination. However, the Court later determined that the United States opened the door and allowed inquiry into the EDVA declination.  Of course, the government intends to be extra cautious this time in an effort to exclude this topic. Nevertheless, the United States again urges this Motion in Limine, and requests the Court order the defense to not reference the following:

       o   The United States Attorney's Office in the EDVA declined prosecution of this case;

       o   That an Assistant United States Attorney in the EDVA prepared a memo explaining the reasons why the case was declined in the EDVA;

o The EDVA declination memo and its contents[1];
o That an Assistant United States Attorney in the EDVA sent an e-mail asking whether there was new evidence after the EDVA declination.

The prosecutorial decision to decline a case or any issue related to the declination is irrelevant under Fed. R. Evid. 403. *See, e.g. United States v. Williams,* 2022 WL 2132327, at *8, n. 10 (E.D. La. June 14, 2022) (noting that commentary on the government's decision not to prosecute would violate Rule 403). The declination does not go to prove or disprove any element of the offense, it is merely offered to entice the jury toward nullification. The dangers of unfair prejudice and confusion substantially outweigh any possible probative value. Fed. R. Evid. 403.

Any reference to a prosecutorial declination in another federal district is an attempt at nullification. It is a side show distraction defense tactic wherein the defendants hope the EDTX jury's judgment will be supplanted and influenced by the evaluation of one prosecutor in the EDVA who declined to prosecute a difficult, time intensive, nationwide fraud case.

Any reference to the declination is an attempt to usurp the EDTX jury's authority to act. Just as one juror cannot share specialized knowledge with the other eleven jurors, it is especially prejudicial for a jury to hear evidence that another prosecutor in another district reviewed the case the jury is now evaluating and declined to prosecute. This is the exact type of testimony and evidence that Rules 401 and 403 address. Fed. R. Evid. 401,

---

[1] During the trial, the Court evaluated whether or not to admit the memo as substantive evidence. The Court decided to make it part of the record for appeal but decided that it could not be shown or discussed with the jury, noting the memo itself does not contain any Brady material, as it was the mental impressions of a single prosecutor in a district no longer involved in the prosecution of this matter.

403. The declination has no "tendency to make a fact more or less probable" and it is not "of consequence in determining the action." Fed. R. Evid. 401. And, there is a "danger" of "unfair prejudice, confusing the issues [and] misleading the jury…." Fed. R. Evid. 403.

To the extent the Court does allow this evidence, the government would ask that the only evidence that is allowable is the fact of a declination—nothing more. The declination memo and related emails are not only hearsay, but stray far away from anything relevant for this jury to consider. Moreover, probing deep into this topic invites rebuttal evidence from other agents and AUSAs about the declination process and why and how certain cases end up being prosecuted in some districts and not others. Such issues are a waste of this Court's and the jury's time and attention.

### (2) Any ruling, event, or outcome from the previous trial, including:

- o This court's prior legal and evidentiary rulings;
- o Co-defendant Gina Ellingsen's Rule 29 acquittal;
- o Hadi Akkad's acquittal on Count 2;
- o The jurors' vote with respect to any of the charges, including that they were 11-1 or 9-3 to convict defendant Vaughan.

The reasons to exclude this evidence mirror the reasons to exclude the EDVA declination. Simply put, another jury's assessment of the evidence is irrelevant. Any reference or argument to them is a call for jury nullification, as the prior trial-related events in this case have no bearing, whatsoever, on the evidence that this jury will consider with respect to these two defendants. Indeed, during retrials before (*e.g.*, *USA v. Hester, USA v. Jordan*), the Court has expressly granted similar motions to exclude reference to the prior proceedings.

**(3) Any impact the jury's verdict may have on ETS, the company or the company's financial issues or status, including any argument that U.S. Bank or Elavon may benefit by "taking" or "stealing" ETS's business.**

In the previous trial, defense counsel suggested, during examination and in argument, that a conviction would allow Elavon/US Bank to keep ETS for "free." While the government does not object to questioning a witness about his or her motive for testifying, the suggestions raised by the defense in the first trial are problematic for several reasons. First, the company ETS never was charged. Only individual actors are criminally charged, so this argument by the defense is confusing and misleading under Rule 403, unless the defense can show that a witness had some sort of personal motive or bias against one of the defendants, which they cannot. Second, any impact or effect the jury's verdict may have on ETS and its relationship to U.S. Bank or Elavon is irrelevant to the elements of the offense—including the defendants' knowledge related to whether they were committing criminal offenses. A guilty verdict in a criminal case can have implications in related civil proceedings, which the Court has already ruled are inadmissible. Accordingly, it is not proper to comment on the possible impact or invite the jury to speculate on the possible impact the criminal verdict may have in any matter. Reference or argument about the impact of a criminal verdict on a civil case confuses the issues and—consequently—the jury.

This would constitute a tacit call for nullification. Jury nullification is not a legally sanctioned function of the jury, and counsel is not permitted to present the concept of jury nullification to the jury, let alone encourage it. *See*, *e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) (holding that "defendant has no right to invite the

jury to act lawlessly"). The Fifth Circuit has noted that "[e]vidence admitted solely to encourage nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial." *United States v. Penn,* 696 F.3d 450, 458 (5th Cir. 2020).

**(4) Any impact the jury's verdict may have on the defendant or the defendant's family.**

Further, district courts have found that it is improper for a defendant to present evidence concerning hardships that a conviction may place upon him or his family. *See, e.g. Crinel*, 2016 WL 6441249, at *5 (granting motion in limine excluding evidence about the impact that a conviction may place upon the defendant and his family). In this case, reference to any impact the jury's finding may have on ETS or the defendants' relationship with Elavon or U.S. Bank may correspond to a financial hardship on the defendants or their families. Furthermore, such issues relate, if anything, to sentencing, which is never before the jury in the federal system.

Reference to the effect or impact of a jury's verdict is not relevant. Even if it were relevant, the dangers of unfair prejudice and issue confusion substantially outweigh any possible probative value. Fed. R. Evid. 403.

**(5) Any comment, argument, or suggestion about the motives or propriety of a former ETS employee retaining pool counsel set up through US Bank**

As the Court knows, in large-scale investigations, it is routine for a corporation to set up "pool" counsel. This refers to the practice of an organization recommending or providing the services of an attorney (or set of attorneys) to certain individuals, including current or former employees. US Bank offered and paid for pool counsel to former ETS

employees, including some of the witnesses and co-defendants in this case.  Nothing about that process was out of the ordinary, let alone improper.  However, during the first trial, counsel suggested that pool counsel forced these employees to cooperate with the investigation and told them what to say.  While this may fit with the defense's conspiracy-theory narrative, it is misleading and improper for many reasons: (1) the attorneys who ultimately represented the co-defendants who pleaded guilty were not appointed or paid by US Bank; (2) it comments on the witness's invocation of a right to counsel, and touches on and chills a witness's right to have privileged communications regarding their decision to speak with law enforcement; and (3) makes no fact of consequence regarding the defendants' knowledge, intent, or the underlying fraud scheme, more or less probable.  In fact, such questioning opens the door to a host of side-issues that would be mere distractions for the jury, such as when pool counsel gets appointed, how pool counsel gets paid, and potential conflicts.

## Conclusion

The United States requests that this Court direct the parties not to mention any of the previously ruled on matters or the additional matters without first approaching the bench and obtaining a ruling on their admissibility.

Respectfully submitted,

ABE McGLOTHIN
ACTING UNITED STATES ATTORNEY

*/s/ Anand Varadarajan*
ANAND VARADARAJAN
Assistant United States Attorney
Texas State Bar No. 24088576

Email: anand.varadarajan@usdoj.gov

G.R. JACKSON
Assistant United States Attorney
Texas Bar No. 00784874
glenn.roque-jackson@usdoj.gov

101 East Park Boulevard, Suite 500
Plano, Texas 75074
972-509-1201
Fax: 972-509-1209

### CERTIFICATE OF CONFERENCE

The U.S. Attorney's Office for the Eastern District of Texas has conferred with counsel for the defendants, who adopt the same position as they did previously, based on a recent filing (Dkt. No. 426). The government has not heard from the defense regarding their position on the new topics addressed herein and presumes they are opposed.

*/s/ Anand Varadarajan*
ANAND VARADARAJAN

### CERTIFICATE OF SERVICE

I certify a true and correct copy of this motion was served on defense counsel by electronic filing (CM/ECF) on this May 5, 2025.

*/s/ Anand Varadarajan*
ANAND VARADARAJAN