# EXHIBIT A

1  plays out, because the facts are the facts in terms of
2  transfers happening.  Whether it was a violation of a bond
3  condition seems irrelevant in some ways to me.  I
4  understand your point, but -- but I will think about it and
5  see if I can find any -- you know, since you can't find any
6  case law, we'll see if my trustee staff can but --
7              MS. BROOKS:  Perfect.  Thank you.
8              One other issue that's not to that.  Repeatedly so
9  far, in the opening and also in the form of some of the
10 questions, there has been an insinuation of essentially a
11 constructive amendment to the Indictment and that the
12 Government has taken an opposite position of what's in the
13 Superseding Indictment.
14             That is not only not factually accurate, it's
15 actually not legally accurate as far as what the
16 requirement is on pleading and proving the conspiracy.  And
17 we think that that's misleading at best and it's incorrect.
18 And so we would ask for a *limine* on that, that the
19 insinuation to the jury is that we have not -- we're
20 presenting a theory or presenting a case that is
21 inconsistent with the Indictment.
22             Now, certainly they can probe that in a way of
23 their argument --
24             THE COURT:  Ms. Brooks, I mean, first of all, the
25 Court has not entertained their argument on this.  I

1  disagree with their argument.  I think the Indictment is
2  broad enough.
3           The Indictment is the Indictment.  So their
4  argument is the Indictment restricts to this certain fee.
5  Your argument is the Indictment is broader than that.  I
6  think you're right, but there is nothing wrong with them
7  making that argument.  I mean --
8           MS. BROOKS:  Then we will continue to object as --
9  just as needed based on the way that it is framed because I
10 think it's a direct attempt to mislead this jury --
11          THE COURT:  Well --
12          MS. BROOKS:  -- as to what the legal requirements
13 are in pleading and proving this case.
14          THE COURT:  I understand, and there may be valid
15 objections based on what they decide to -- how they do it.
16 But in terms of a factual dispute and then asserting that
17 the Indictment doesn't -- isn't as broad as you are
18 asserting, that's their argument.  The jury is going to
19 have the Indictment.  They are going to be able to read it
20 themselves and determine is it limited to that or not.
21 That's not a legal decision for the Court to make; that's a
22 jury decision.
23          MS. BROOKS:  To the extent that that continues to
24 be an issue, would it be improper, then, to point directly
25 to where that's shown in the Indictment for the jury,

1  because they're not going to get the Indictment until the
2  end, and they've been watered down for three weeks with
3  this claim that's not accurate?
4          Is that -- would that be a possible remedy as far
5  as in the form of our questions?
6          THE COURT:  Well, I can't say.  I mean --
7          MS. BROOKS:  Okay.
8          THE COURT:  We'll have to wait and -- you're
9  giving me hypotheticals.  We'll have to wait and see how
10 the evidence comes in -- or what they do on their
11 questioning.
12         MS. BROOKS:  All right.  Thank you.
13         THE COURT:  Okay.  Anything else?
14         MR. CLINE:  Your Honor, as long as we're pausing
15 here, let me raise one thing.  I apologize.
16         Are you able to hear me?
17         THE COURT:  I can now, yes.  Well, I could hear
18 you before, but my court reporter needs it to go through
19 the sound system.
20         MR. CLINE:  Yesterday in questioning Agent Rennie,
21 according to my notes -- and if I got it wrong, I'm sure
22 I'll be corrected -- he was asked where did this case
23 begin, and he said it began in Virginia and now it's being
24 prosecuted here.
25         And then he was asked, as I recall it, "Is it